## SILKMAN VS. THE CITY OF MILWAUKEE.

*Liability of city for moneys paid into the city treasury on special assessment.*

1. Under the charter of the city of Milwaukee, when the board of public works has issued a certificate showing that A. has done certain work in the improvement of a street, and is entitled to a certain sum therefor, chargeable to the owner of a specified lot, etc., *it seems* that until the money has been collected and paid into the city treasury, the treasurer is the agent of the holder of the certificate, to be set in motion in his behalf only by *mandamus*, in case he refuses or neglects to proceed with the collection of the money as required by the charter.

2. After such money has been collected and placed in the city treasury, if the treasurer refuses to pay it over, on demand, to the holder of the certificate, the latter may maintain an action against the city for the amount as for money had and received to his use.

3. In such an action the complaint must show clearly, not only that the amount was duly assessed upon the lot in question, and such lot sold therefor, and a certificate of the sale issued, but also that the money was *actually paid* into the city treasury.

4. If the treasurer sold the lot and issued a certificate of the sale, but did not require the money to be paid by the purchaser, the city is not liable in an action for money had and received, but plaintiff must seek his remedy by some other form of action.

APPEAL from the County Court of *Milwaukee* County.

One Crilley paved Huron street in Milwaukee with Nicholson pavement, under a contract with the defendant city, and received from the board of public works the usual certificates for the work, including one for paving said street in front of the west thirty feet of the east sixty feet of lot 6, block 14, in the third ward of said city. This certificate, which was dated October 29, 1870, and was in the usual form, stated that said Crilley was entitled to the sum of $150.83 for said work, chargeable on said part of lot 6, and that unless that sum should be paid to Crilley, his heirs or assigns, before the time of making out the annual tax list, the same would be assessed upon the premises described, and collected for the use and benefit of the holder of the certificate. Said sum of $150.83 not having

been paid to the holder of the certificate at the time of the making out of the annual tax list for said city, the amount was assessed, as provided by law, upon the premises aforesaid, in the same manner as other taxes were levied and assessed for that year upon real estate in that city, and the tax list was made out according to law and delivered to the treasurer of the city, who proceeded to give notice and collect the taxes upon property named in the list according to law ; and the premises described in said certificate were included in said tax list, with the taxes assessed thereon, both general and special, including said sum of $150.83. The taxes and assessments upon said premises not having been paid, the city treasurer, on the 20th of February, 1871, duly sold the undivided one-fourth part of the west thirty feet of the east sixty feet of said lot 6, together with a certain portion of lot 5 in the same block, for the taxes and assessments thereon, amounting together to $197.10, to one Eldred, which amount included the aforesaid sum of $150.83. Thereupon the city treasurer, "acting for and on behalf of the defendant in the premises, did issue to the purchaser, said Eldred, a certificate containing the name of the purchaser, a description of the premises sold, the amount paid therefor," etc. Prior to said sale of the premises, Crilley had sold and assigned the certificate aforesaid to the present plaintiff. The complaint in this action, after setting up the above facts, alleges that plaintiff is now the lawful owner and holder of said certificate ; and that, by reason of the premises, plaintiff became and was on the 20th of February, 1871, entitled to demand and receive of defendant said sum of $150.83 ; that afterwards, on or about the 25th of said month of February, he demanded of the city treasurer, the proper officer whose duty it was to pay said certificate, the sum of $150.83, and presented said certificate of the board of public works to said treasurer, and demanded payment thereof, which was refused ; and that defendant has hitherto neglected and refused to pay said sum or any part thereof, and is now indebted to plaintiff for said sum, with interest, etc.

There was a second count upon a separate certificate for work done upon another part of said lot 6, the allegations of which are precisely similar to the above.

The defendant city demurred to the complaint as not stating a cause of action, and appealed from an order overruling the demurrer.

*E. G. Ryan*, for appellant, insisted that the complaint does not allege any *delivery* of the certificates of sale to the purchaser, nor any payment by the latter of the purchase money to the treasurer, and stated that in fact the money was not paid nor the certificates delivered ; that the purchaser made default in not paying according to his bids, and the treasurer made default in not selling according to his duty. He further contended that under ch. 7 of the charter of Milwaukee of 1852, and the various acts amending it, especially the act establishing the board of public works (P. & L. Laws of 1869, ch. 401, amended by P. & L. Laws of 1870, ch. 401), work like that described in the complaint is a burden or duty upon the lots abutting on the street improved, and the city is not primarily chargeable therewith ; that when the order for the work is made, it is the duty of the lot owners to do such work at their own cost; and that, upon their making default, the city is charged with the duty of doing the work *for the owners* and *at the expense of the lots,* by letting the work to the lowest bidder, and making a contract for doing it for the price bid, payable by lien on the lot in the first instance, and by sale of it to pay the lien at the next tax sale, if the owner neglects to pay it in the mean time. The city fulfills its duty by issuing a certificate of the lien, which implies no guaranty or liability of the city. Sec. 10 of ch. 7 of the charter of 1852 provides that "*in no event,* where work is ordered to be done at the expense of any lot or parcel of ground, shall either the city or any ward be held responsible for the payment thereof." And this is a proviso to the authority to issue the certificate. And ch. 401, P. & L. Laws of 1869, enacts that any person entering into contract with the city payable

from special assessments, shall have no claim upon the city in any event, except from the collection of the special assessments made for the work contracted for.    Under these provisions, a failure of the proper officers to issue the certificates of work done, would not make the city liable for the contract price. The remedy of the contractor would clearly be by *mandamus* against the proper officers, or by personal action against them. When the certificates are issued, they are mere private liens upon the lots charged; and they may be transferred from person to person, or may be cancelled or surrendered on any private terms.    If they are not paid before the time of making the next assessment roll, the city clerk is required to put them on the roll, but he does this for the holders, and at their election, and his failure to do it should not render the city liable, but the holders' remedy would be by *mandamus* to the clerk or by personal action against him.    So, where the certificates are upon the roll, it is the duty of the treasurer to make sale of the lots to satisfy them, but it is his duty to the holders of the certificates, and not to the city.    The acts of 1852 and 1869 both declare that they shall be placed on the roll and collected for the use and benefit of such holders; and the same implication arises from the whole tenor of the provisions on the subject.    When the money is collected, the treasurer does not pay it out on city orders, as he is required to pay all moneys of the city, but holds it for the holder of the certificate, and as his money, and pays it to him as such, without any order or authority of the city.    If he refuses to pay it, the city has no power to compel him. And the remedy of the holder of the certificate would, even in that case, not be against the city, but against the treasurer, by *mandamus* or by personal action.    In support of these general views of the charter, counsel cited *Smith v. Milwaukee*, 18 Wis., 371.    2.    This is not an action *ex contractu*, because no contract relation is shown between the parties.    It is an action *ex delicto* against the city, for the fault of an officer.    The municipality cannot be a tort-feasor through the act of its officers, unless

such act is expressly authorized by the municipality.   3. There are no averments in the complaint to show that the contract with *Crilley* was valid.   It is not even averred to have been duly made.   The complaint should have averred that the city had acquired the royalty of the patent for this Nicholson pavement (P. & L. Laws of 1871, ch. 360, sec. 10; *Dean v. Charlton*, 23 Wis., 590), and that the work was let by public notice to the lowest bidder, and that the contract with *Crilley* was executed in pursuance of such letting.

*Austin & Wallber*, for respondent, argued that the action was solely upon the implied obligation of the defendant to pay over money which has been collected for the use of the holder of the certificate; that no allegations, therefore, as to the validity of the certificate of work done, or the validity of the assessment, were necessary; that the certificate, after being issued by the board of public works, became the sole property of the holder, and subject to his control, but after the making out of the annual tax list, it being unpaid, all subsequent proceedings into which it became merged, were absolutely under the control of the defendant (*Smith v. Van Dyke*, 14 Wis., 208), and, if they were wrong, defendant cannot take advantage of its own wrong, especially in a form of action which is equitable in its character.   2. The issue of the *certificate of sale*, in such a case, is evidence of a sale, and an acknowledgment that the money has been paid by the purchaser. City charter, ch. VIII., sec. 11.   (1.) By the provisions of the section cited, the certificate can be rightly issued only on receipt of the money. (2.) By issuing the certificate to the purchaser, the power over the land upon which the assessment was made, is exhausted, and all proceedings against it concluded.   (3.) If the money had not been paid by the purchaser, it became the duty of the treasurer to resell the land, according to sec. 12 of the same chapter.   The fact that he has not resold it, but has issued a certificate of sale to the purchaser, is a confession that the money has been received, which defendant is estopped to deny,

the holder of the certificate being effectually precluded from taking any further proceeding thereon. To the point that an action might be maintained against the city on its implied obligation to pay over the money to plaintiff, counsel cited *Gilbert v. Oshkosh*, 14 Wis., 586 ; *Finney v. Oshkosh*, 18 id., 211 ; *Hunt v. Utica*, 18 N. Y., 442 ; *McCullough, v. Mayor, etc.*, 23 Wend., 458.

DIXON, C. J. We have no occasion to doubt, and indeed we concur in, the correctness of the views generally expressed by the learned city attorney upon the several provisions of the charter referred to and examined by him. We agree with him that until the money has been collected by the city treasurer for the use of the holder of the certificate of the board of public works, the treasurer is the agent of such holder, to be set in motion in his behalf only by *mandamus* in case he refuses or neglects to proceed with the collection according to his official duty, and as required by the provisions of law found in the charter and its amendments. We differ from the learned attorney, however, upon the proposition, that after the money has once been collected and placed in the city treasury — for it seems the treasurer has no where else to put it, — an action for money had and received cannot be maintained against the city, when the treasurer improperly refuses to pay it over on demand made by the holder of the certificate. For the purpose of receiving and disbursing according to law all moneys coming into the city treasury, the city treasurer must be regarded as the agent of the city, receiving, holding and disbursing the funds for the city, as principal, and not for himself, and not as the agent of numerous private individuals who may be interested in those funds. For all such purposes he has but one principal, and that principal is the city or corporation by which he is chosen treasurer, and to which he is required to give security for the faithful performance of all his duties, and to which also he must render an account for all moneys coming

into his hands in his official capacity. And it is immaterial for such purposes that the funds are trust funds, or such as are received and held in the treasury for the use and benefit of particular persons or corporations, until they shall be called for by such persons or corporations. The city is the trustee, and not the treasurer. He is the mere agent, and his default is the default of the city, his principal, against which the action may be brought by the party aggrieved by such default or neglect. If, therefore, the money in question had been actually received by the treasurer, or if the complaint had shown that fact, we should have been obliged to hold this action well brought.

Counsel for the plaintiff say the complaint contains a statement of such facts only as were deemed necessary to sustain an action for money had and received, and they admit that if the defendant be not charged with a liability by the complaint as for money had and received, no cause of action is stated therein. Such being the view of counsel, and such the manifest nature and object of the action as shown by the complaint, all questions as to the regularity or validity of the previous proceedings out of which the certificate arose, and in pursuance of which the moneys were levied and collected, if at all, became clearly immaterial, and for the reasons given by the same learned counsel. If the city has received the money and refuses through its proper officer to pay it over as required by law, it does not lie with the city, no one else objecting, to raise questions or insist upon proofs in this action as to the validity of its own antecedent acts. We shall inquire, therefore, merely into the sufficiency of the complaint as a complaint for money had and received; for such is the cause of action counted on, and not one upon the contract for paving the street, or upon the certificate issued by the board of public works.

The complaint does not in terms allege that the money, or any money, was actually received by the treasurer. It stops precisely short of making that averment. It alleges a sale of the lot or portion of it to satisfy the assessment, and the issu-

ance of the certificate of sale to the purchaser.    It does not aver that the purchaser *paid his bid*, or that the certificate of sale was *delivered* to him.    We are asked to infer the payment of the money and delivery of the certificate of sale from the other facts which are alleged.    We do not think this can be done. The liability of the city in this form of action cannot arise until the money has been actually received in its treasury; and that fact must be clearly and positively alleged and proved. The liability springs from the receipt in fact of the money, and a refusal to pay it over upon demand properly made; and no constructive receipt of it, or receipt by inference or implication, or liability by way of estoppel growing out of the acts of the city treasurer, can be accepted in the place of or as a substitute for the money in the treasury.    If the treasurer has failed in the performance of his duties in any other respect than in not paying over the money when he has it in the treasury, the injured party has his remedy in some other form of action, and to that remedy he must resort.    The facts pleaded are not inconsistent with the supposition that the money sued for may not have come to the treasury of the defendant.    If the money did in fact so come, let the pleader so allege.    The facts pleaded do not exclude the inference that the money, though bid or offered at the sale, was not paid by the bidder, and that the certificate, though issued, that is, made out and signed and entered upon the books, was not delivered to the supposed purchaser. And, though this might have been a wrong on the part of the treasurer, to give time to the purchaser or not to proceed immediately to a resale of the premises — a dereliction of official duty by him, for which he or the city would be answerable to the plaintiff in some other form of action, yet this action could not be maintained against the city under such circumstances, because no money was received by it for the use of the plaintiff, which is the underlying fact and very foundation of the action.

The complaint is defective in not averring that the money sued for was received by the treasurer or into the treasury; and

for this reason the order appealed from must be reversed, and the cause remanded for further proceedings according to law.

*By the Court.*— It is so ordered.