Case 91—INDICTMENT—November 4, 1882.

# White v. The Commonwealth.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. Upon a motion for continuance because of the absence of a witness,. where the evidence is material, and diligence has been used to secure the attendance of the witness, and there are reasonable grounds to believe that his presence will be had by a continuance, the continuance should be granted, although the witness be a non-resident.

2. Upon the question of. the identity of the accused, the court improperly rejected the testimony of a witness who knew the accused at the time the bonds, with the larceny of which he was charged, were alleged to have been purchased from him in Cincinnati, that he saw there a person so strongly resembling the accused that he twice approached the person with the intention of speaking to him, believing him to be the accused.

White v. The Commonwealth.

3. Proof of character in aid of the presumption of innocence should be limited to the time of the discovery of the commission of the offense, and it was therefore error in this case to extend it to the date of arrest. Such proof is always confined to the impression that the community may have received from the general bearing of the accused, and is not allowed to extend to particular acts or conduct in special cases.

4. During a trial for felony where the bail appears, is sufficient, and agrees to stand bound on the bond, the accused is entitled to remain on bail until the cause is submitted to the jury; and it appearing in this case that the personal liberty of the accused was necessary to the preparation of his case, the refusal of the court to allow him to stand on his bond is a reversible error.

5. Under an indictment for the larceny of municipal bonds, evidence that the holder of the bonds purchased them in open market for full value, that they were genuine, and that the person who purchased them from the accused paid full value, was competent; and, taken in connection with the bonds, which were read in evidence, authorized the jury to find that they were issued by authority, signed, executed, and delivered, as charged in the indictment.

BRECKINRIDGE & SHELBY, MORTON & PARKER, and THOMPSON & THOMPSON for appellant.

1. The court erred in refusing a continuance to appellant. The fact that the witness is a non-resident does not change the rule nor the propriety of continuing the case. (Arch. on Crim. Prac. and Plead., 568; Whart. on Crim. Law, vol. 3, sec. 3021; Morgan v. The Commonwealth, 14 Bush, 111.)

2. Appellant was entitled to stand on his bail and be free to attend to his case. Sections 189 and 229, Criminal Code, should be so construed as to harmonize. (16 B. Mon., 407; 10 Bush, 16; 5 Mon., 157; 12 Bush, 235.)

3. The proof admitted by the court in regard to character is error. No evidence should have been permitted subsequent to April 4, when the theft was discovered. (22 Pick., 394; 1 Winst., 151; 119 Mass., 342; 116 Ib., 350; 2 Ib., 303; 68 Md., 54; 51 Ills., 231; Whart. on Crim. Law, sec. 637; 11 Cush., 241.)

4. When the evidence showed that the bonds charged to have been stolen were issued by authority of the state of Ohio, the court should have given a peremptory instruction for appellant. (Henry v. Commonwealth, 1 Met., 36; Rev. Stat., vol. 1, 382; Gen. Stat., 323; Crim. Code, sec. 133. Myers' Code, sec. 135; 1 Duv., 90; 1 Met., 368.)

P. W. HARDIN, Attorney General, for appellee.
   No brief.

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

Appellant was indicted on the charge of stealing certain municipal bonds of the city of Cincinnati, in the State of Ohio, tried, convicted, and sentenced to the penitentiary for two years.

Counsel for appellant complain, first, that the court erred in refusing a continuance on account of the absence of one Straus, a resident and citizen of Cincinnati, Ohio. The affidavit for continuance shows that Straus was in the habit of visiting Lexington, Kentucky, the place where the trial was pending; that he had been served with subpœna, and that he had promised to appear at the next term of the court, and it is alleged that appellant could secure his attendance at the succeeding term. It appears that the refusal to grant a continuance for this witness was based entirely upon the fact that he was a non-resident of the State, no question having been made as to the materiality of the evidence, as there could not be, because it is stated in the affidavit that, at the time it is attempted to prove that the appellant sold the bonds in the city of Cincinnati, he was engaged in business in the presence of the witness, and at a place different from that at which it is attempted to prove that the sale of the bonds occurred. The materiality of this evidence is increased by the fact that Dunlap, who claims to have purchased the bonds from appellant, had never before seen him, and as appellant appears to have no marked characteristic of features, form, or carriage by which to distinguish him from the common herd, the probabilities of a mistake in identification are much greater. Ordinarily, where the evidence of the absent witness is material, where reasonable diligence has been used to secure his attendance, and there are reason-

White v. The Commonwealth.

able grounds made to appear that the presence of the wit-ness can be had by a postponement or continuance, the postponement or continuance should be allowed.    Here the materiality is unquestioned; there was no want of diligence on the part of appellant, and upon the face of the affidavit, which is not contradicted, there appear reason-able grounds to believe that the attendance of the witness could have been had at the next term of court.    Whether the witness is a resident of the state or non-resident and absent from the state, the inquiry in either case is the same: Is the evidence material, has diligence been used to secure his attendance, and are there reasonable grounds to believe that the presence of the witness will be had by a continu-ance?    The question is not whether the court can enforce the attendance, because if that were true a continuance could not be had on account of the absence of a citizen of this state, who was at the time within the jurisdiction of another sovereignty.    In neither case could coercive process be applied.    The right to a continuance in either case would depend upon the probabilities of the witness coming within or submitting himself to the jurisdiction of the court.    The court erred in refusing the continuance.

Another question is made by counsel as to the admissi-bility of evidence, which is the more important by reason of its relation to the question just discussed.    Appellant offered to prove by Vanarsdale, who was present in court, that he had for years been intimately acquainted with appel-lant; that at the time Dunlap testifies to having purchased the bonds of a person answering in general the personal appearance of appellant he, Vanarsdale, was in the city of Cincinnati, and there met, at or about the time of the alleged sale of bonds, a person, who was a stranger to him,

so strongly resembling appellant that he twice approached
the person with the intention of speaking to him, believing
at the time that he was appellant, and that he did not dis-
cover the mistake, so strong was the resemblance, until he
had approached him near enough to extend his hand for
the purpose of shaking hands.  We see no reason why this
evidence was not competent, in substance at least, to throw
light upon the question as to whether appellant was the per-
son who sold the bonds to Dunlap.  There may be some
objection to a portion of what counsel allege they could
prove by Vanarsdale, but the outline facts that he knew
appellant well; that at the time of the sale of the bonds in
Cincinnati the witness was there, and that he met a person
who so strongly resembled appellant that he believed the
person to be appellant until close inspection, are certainly
competent upon the inquiry as to whether Dunlap was not
mistaken as to the person from whom he purchased the
bonds.  When there are no marked characteristics about
the accused by which he may readily be distinguished from
the commonality, there are but two ways by which he may
establish the fact that the accusing witness is mistaken as to
identity.  The one is to prove an alibi, and the other is by
such proof as attempted to be introduced here.

We are also of opinion that the court erred in admitting
evidence of character covering the period between the dis-
covery of the perpetration of the offense and the time of
the arrest.  The discovery that the bonds had been stolen
by some one was made on the 4th of April, and the arrest
of appellant on the charge was made on the 12th of May
following.  The court confined the proof of character to
the date of the arrest, when it should have been limited to
the time of the discovery of the commission of the offense.

In the proof of character in aid of the presumption of inno-cence, it is always confined to the impression that the community may have received from the general bearing of the accused, and it is not allowed to extend to particular acts or conduct in special cases. The principal reason why it is not allowed to extend to particular instances of good or bad conduct is, that such evidence might raise an unlimited number of collateral issues, for which neither the accused nor the Commonwealth would come prepared, and which issues would necessarily becloud the issue of guilt or innocence in the charge under consideration. And it may be said that the rule is a good one for another reason, and that is, that the growth of character is so subtle that its existence cannot always be predicated of, or based upon, certain acts, or formulated from specific conduct to which one can point as tangible and satisfactory evidence of the conclusion at which he may have arrived. A single lapse from virtue, or a single infraction of the world's code of honor, may blast a charac-ter, but its growth to good is slow. It is made up of num-berless and infinitesimal acts, the individuality of which is lost sight of as they pass, and the aggregation alone remains as a monument to character. A growth so slow, a charac-ter so formed, ought to weigh in the consideration of the probabilities that the accused has been guilty of a specific offense which is inconsistent with it.

Mr. Wharton on Criminal Law, sec. 638, lays down the proposition, in general terms, that proof of general charac-ter subsequent to the discovery of the perpetration of the offense is not competent; but all the authorities cited by him in support of the proposition do not support the con-clusion. Those cited to which we have had access are cases in which the question does not necessarily arise, although

the statement of the law, as indicated by Mr. Wharton, is supported by the expression of opinion in the particular cases. He also cites Commonwealth v. Sacket, 22 Pickering, as supporting the opposite view, but on examination it will be seen that no such question properly arose in that case, and the opinion expressly says that its determination is not necessary in the case. The only other case to which we have had access is that of Brown v. The State, 46 Alabama, 184. In that case the question did properly arise, and the court, referring to and disapproving the case of Commonwealth v. Sacket, 22 Pickering, held that the evidence should be confined to the date of the discovery of the perpetration of the offense. But independent of authority, we think the reason of the rule applied by the court below, in which the court extends the evidence up to the time of the arrest, would stop it at the time of the discovery of the fact that the offense had been committed. The only reason for stopping the inquiry at either point is, that the probabilities of innocence arising from previous good character may not be destroyed or embarrassed by the fact that the offense under consideration has been committed. If the inquiry may be extended to the time of arrest, it may, upon the same ground, be extended to the moment of the trial. But this cannot, manifestly, be done, because it would cause the particular offense with which the accused is charged to destroy previous good character. After the discovery that an offense has been committed, a previous good character may be destroyed, and a bad one created by discussion of the circumstances connected with the offense, as well before as after the formal charge by legal proceeding is had. To permit the inquiry as to character to extend beyond the time of the discovery that the offense had been committed,

White v. ·The Commonwealth.

would be to allow evidence based entirely upon a single
transaction, which is contrary to the whole theory upon
which evidence of character is admitted in support of the
presumption of innocence.

Counsel for appellant make the question that the court
below erred in refusing to allow the accused to remain on
bail during the progress of the trial. The record shows
that bail had been previously given ; that the surety on the
bail bond was amply good; that he came into court on the
calling of the cause, and offered to stand on the bond during
the trial, and that the court refused to allow this to be done,
but ordered the accused to be placed in custody of the offi-
cers of the court. · At the time appellant made the applica-
tion to remain on bond, and his surety appeared and offered
to stand on the bond, appellant filed an affidavit stating that
his freedom from custody was necessary to the preparation
and conduct of his case. This we think was error, and, in
view of the refusal of the court to allow a continuance of
the cause on account of the absence of Straus, by whom
an alibi may have been proved, and in view of the fact that
the personal liberty of the accused may have enabled him
to secure the attendance of that witness, the error is a
reversible one. Section 183 of the Code provides that the
accused shall remain in actual custody during a trial for
felony, unless his bail appear personally in court and con-
sent that he may remain on bail, in which case he shall be
placed in actual custody when the case is finally submitted
to the jury.

Section 229 of the Criminal Code provides, that during
the trial of an indictment for felony, the defendant shall
be committed to and remain in the custody of the proper
officer.

There is no necessary conflict between these two sections. When construed together, as they must be, their meaning is, that unless the bail comes into open court and agrees to stand on the bond, the accused must be committed to the care of the officer, and remain in custody, but that where the bail appears, is sufficient, and agrees to stand bound on the bond, the accused is entitled to remain on bail until the cause is submitted to the jury.

The next question is as to whether the proof supports the allegations of the indictment. It is alleged that the bonds claimed to have been stolen were of a certain description, issued by the city of Cincinnati, Ohio, and signed and countersigned by certain persons. The evidence admitted was to the effect that the holder of the bonds purchased them in open market for full value; that they were genuine, and that the person who purchased them from appellant paid full value. Was such evidence competent, and did it go to establish the fact that the bonds were issued by authority, were signed, executed, and delivered? It should have been observed that the bonds, on their face, import what is alleged in the indictment as to the signing and execution by authority of the State, and that they were read in evidence. We are of opinion that such evidence was competent, and that from the evidence indicated the jury were authorized to find the existence of all the material facts alleged in the indictment, and necessarily put in issue.

For the reasons indicated the judgment is reversed, and cause remanded, with directions for a new trial.