Kansas City v. Ward.

of appeals with directions to enter judgment to that effect. BRACE, C. J., and MACFARLANE and ROBINSON, JJ., concur.

## KANSAS CITY v. WARD *et al.*

### Division One, May 5, 1896.

1. **Kansas City Charter:** ESTABLISHMENT OF PARKS: ASSESSMENT OF BENEFITS: CONSTITUTION. Article 10 of Kansas City charter (amended June 6, 1895), providing that the special benefit to property in proximity to a contemplated park, over and above the benefits to be derived therefrom by the city generally, is to be charged against the property so benefited, is not in contravention of the constitutional provision which prohibits the taking of private property for public use without just compensation.

2. ———: ———: ———: NOTICE. The assessment of the benefit against the property of the citizen *held* not invalid because the charter provides for a notice by publication without personal service of process.

3. ———: ———: TAKING OF PRIVATE PROPERTY: CONSTITUTION. The constitutional guaranty that "private property shall not be taken or damaged for public use without just compensation; * * * and until the same shall be paid to the owner or into court for the owner the property shall not be disturbed or the proprietary rights of the owner therein divested" is not violated by judicial proceedings to determine whether the property can be taken for the desired use and how much must be paid for it, or by the fact that provisions for a fund for payment of the compensation may prove inadequate, since in no event can the property be taken until paid for, and in the meantime the owner is not disturbed in his possession.

4. ———: PARK FUND CERTIFICATES: CONSTITUTION: MUNICIPAL INDEBTEDNESS. Park fund certificates issued under said charter of Kansas City, article 10, are not a part of the indebtedness of the city within the meaning of the constitutional inhibition limiting the indebtedness of municipalities.

5. **Kansas City Charter:** PARK COMMISSIONERS: LEGISLATIVE POWERS: CONSTITUTION. The board of park commissioners under Kansas City charter, article 10, exercise no legislative powers in violation of the constitution, article 9, section 17.

6. ———: ESTABLISHMENT OF PARKS: STATE LAWS. The provisions of article 10, *supra,* of the charter of Kansas City are not a regulation of the practice, jurisdiction, and judicial proceedings in the state circuit courts, contrary to the general laws of the state, inasmuch as said charter provisions supersede the laws of the state relating to such city. (*State v. Field,* 99 Mo. 352 and *Kansas City v. Scarritt,* 127 Mo. 642.)

7. ———: ———: ASSESSMENT OF BENEFITS. The section of such article providing that "if the jury shall find that any number of tracts or parcels of land within the benefit district are benefited ratably in proportion to the assessed value thereof as shown by the books of the assessor, they may so assess them" does not require them to take the assessor's book as a guide even unless they shall find it is a proper one.

*Appeal from Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

AFFIRMED.

*J. V. C. Karnes, W. J. Ferry, Wash Adams,* and *Hugh C. Ward* for appellants.

The law upon which this proceeding was had, known as the park and boulevard amendment to the Kansas City charter, is in contravention of the constitution of Missouri. *First.* It casts the burden of paying for a park upon the real estate in one district composing about one third of the city instead of placing it upon the entire city. *State ex rel. v. Leffingwell,* 54 Mo. 477; *Griswell Case,* 58 Mo. 196. *Second.* It provides for the assessment of benefits without personal service of process on the real estate owner. *Seifert v. Brooks,* 34 Wis. 443; *Kundinger v. City,* 59 Mich. 355; *Smith v. Cochrane,* 37 Pac. Rep. 311. *Third.* No time is provided when the land condemned for park and boulevard purposes shall be paid for, it being left wholly with the court to determine the time within which the compensation must be paid. *Fourth.*

The provision allowing ten years to pay the benefits assessed and leaving it in the power of the court to render judgment of condemnation which will be a lien and embargo upon the property condemned and prevent its sale for ten years, and at the same time making no provision for payment to the property owner for the land taken, is manifestly vicious and in violation of that provision of the constitution which provides for the payment of just compensation for property taken for public use. *Fifth.* Section 24 of article 10 of the city charter now in question provides for the issue and sale of park fund certificates in payment of the real estate purchased or condemned for park purposes. Such certificates being obligations of the city, are absolutely void, as Kansas City has already exhausted its debt-creating power. *Sixth.* Article 10, of the city charter, now in question, violates section 17 of article 9 of the state constitution in that it confers legislative powers on the board of park commissioners, thereby depriving the common council of Kansas City of its legislative power. *Seventh.* That provision which allows the jury of freeholders to apportion benefits upon the valuations appearing on the assessor's books is void. A provision of a condemnation law similar in character was pronounced unconstitutional by this court. *Co. Ct. v. Griswold*, 58 Mo. 199.

*C. S. Palmer, D. J. Haff,* and *C. O. Tichenor* for respondent.

(1) The use of land for a park in a densely populated district, such as a city, or a particular district in a city, is "a public use" in the constitutional sense, and that the condemnation of land for such purpose by the state or a municipality is a justifiable exercise of the right of eminent domain. *Shoemaker*

*v. U. S.*, 147 U. S. 282, and cases cited on page 297; *County Court v. Griswold*, 58 Mo. 175. (2) A park causes such benefits, in the way of increased value to land in the district within which such park is located, as will justify special assessments against the private property so benefited to pay compensation for the taking of land for the park. *Owners of Ground v. Mayor*, 15 Wend. 374; *Holt v. City Council*, 127 Mass. 408; *Foster v. Park Commissioners*, 133 Mass. 321; *Matter of Commissioners Central Park*, 63 Barb. 282. (3) The notice to the property owners was sufficient. *St. Louis v. Richardson*, 76 Mo. 470; *St. Louis v. Ranken*, 96 Mo. 497; *Buddecke v. Ziegenhein*, 122 Mo. 239. (4) The point that no time is provided within which the land taken shall be paid for is not well taken. *Plum v. City of Kansas*, 101 Mo. 525. The possession of the property owner is not interfered with until compensation is made. That a law is unjust or impolitic or oppresive will not justify a court in declaring it illegal. *Co. Ct. v. Griswold*, 58 Mo. 175; *Hamilton v. St. Louis Co.*, 15 Mo. 3; *Forsythe v. City of Hammond*, 68 Fed. Rep. 774. (5) The issuance of the park fund certificates constitutes no valid objection to the charter. There can be no more liability of the city on these certificates than upon a special tax bill. *Quill v. City*, 124 Ind. 292; *Silkman v. City*, 31 Wis. 555; *Fletcher v. Oshkosh*, 18 Wis. 240. (6) No legislative authority is conferred on the board of park commissioners. *Co. Ct. v. Griswold*, 58 Mo. 175; *State v. Hennepin Co.*, 33 Minn. 235. (7) The charter of Kansas City supersedes the laws of the state and furnishes the only provision for ascertaining benefits and regulating the establishment of parks. *State ex rel. v. Field*, 99 Mo. 352; *Kansas City, etc., v. Scarritt*, 127 Mo. 642. (8) The jury is not allowed to apportion benefits upon the valuation appearing on the assessor's

books unless they shall find that it is a correct apportionment.

BRACE, P. J.—This is a proceeding to condemn real estate of the appellants and others, for a public park in Kansas City, under the provisions of article 10 of the charter of said city as amended on the sixth of June, 1895. The regularity of the proceedings under the charter is not questioned, nor is the amount of compensation allowed appellants complained of, but the validity of the provisions contained in said article is challenged on several grounds, that will be noticed in their order.

By the article the city is divided into park districts and there is established an executive department known as the "board of park commissioners" having charge of the parks, parkways and boulevards of the city. Upon the recommendation of this board to the common council, and an ordinance passed by the council in pursuance thereof, by a proceeding provided for in the circuit court of Jackson county, real estate in said city may be condemned and taken for such parks.

It is contended that this law is unconstitutional: *First.* Because it casts the burden of paying for a park upon the real estate of a "benefit district" created under its provisions composed of a part only of the area of the city instead of placing it upon the entire city.

The provision against which this objection is urged is as follows: "The jury of freeholders, to pay compensation for the land purchased, taken, or damaged, shall estimate the amount of benefit to the city at large, inclusive of any benefit to the property of the city, and shall estimate the value of the benefit of the proposed improvement to each and every lot, piece, and parcel of private property, exclusive of the buildings and improvements thereon, within the benefit district, if any benefit is found to accrue thereto; and in case the

total of such benefits, including the benefits assessed to the city at large, equals or exceeds the compensation assessed, or to be paid for the property purchased, taken or damaged, then said jurors shall assess against the city the amount of the benefits of the city as aforesaid, and shall assess the balance of the cost of such improvements against the several lots and parcels of private property found benefited, each lot or parcel of ground to be assessed with an amount bearing the same ratio to such balance as the benefit of each lot or parcel bears to the whole benefit to all the private property assessed.''

1. Public parks in densely populated cities are manifestly essential to the health, comfort, and prosperity of their citizens. It is universally conceded, and not disputed in this case, that such improvements are a public use, within the meaning of the constitution, for the purposes of which, the land of the citizen may be taken upon payment of a just compensation. *County Court v. Griswold*, 58 Mo. 175; *Shoemaker v. United States*, 147 U. S. 297, and cases cited.

They confer not only a general benefit upon all the citizens of the municipality, but over and above this, a special and peculiar benefit upon the citizens owning real estate in the immediate vicinity thereof, in the enhancement of the pecuniary value of their property.

The law in question casts the burden of the general benefit upon the city, and of this special and peculiar benefit upon the property of those who are its recipients, and in so doing violates no constitutional provision, is eminently just and proper, and within the principle upon which special assessments for local benefits derived from public improvements have been uniformly sustained.

If this were a law providing in like manner for charging a proportionate part of the cost of a public

highway in the City of Kansas, upon the local property specially benefited thereby, its validity could not be questioned for a moment.

But it is insisted that a public park is not within the principle governing in cases of public highways, and in support of this contention we are cited to the case of *State ex rel. v. Leffingwell*, 54 Mo. 477, in which it was held that an act of the legislature imposing a tax upon the real estate in a district surrounding "Forest Park" *outside the limits* of the city of St. Louis to pay for the land required for said park which was declared to be "a municipal purpose of great importance to the *city of St. Louis* conducive alike to the dignity and character of the city, and the recreation, health, and enjoyment of its inhabitants," was unconstitutional and void for obvious reasons stated in the opinion.

The law in question in that case is so different from the one under consideration, and the distinction between that case and that of *Owners v. Mayor*, 15 Wend. 374, which is analogous to the one in hand, so plainly pointed out in the opinion, that the *Leffingwell* case would probably not have been cited in support of appellant's contention but for the following language used by Judge ADAMS in the opinion on motion for rehearing:

"Private property can not be taken for public use without a just compensation. Special benefits can not form any part of such compensation, unless they attach to and become a part of the taxed property. The phrase 'special benefits' is a misnomer as applied here. A lot holder has a property interest or easement in the adjoining street independent of the general public, and the improvement of the street may be a special benefit or an absolute injury to his lot. If it be a benefit he must pay for it, and a special tax may be levied on his lot for that purpose. But adjacent property holders

can have no easement or property right whatever in a park. Their interest is precisely the same as all other citizens, and a tax upon them because of their locality, is only a thin guise for confiscating their property without any just compensation."

If the proposition contained in this *dictum*, that special benefits can be assessed against real estate only when the owner has or retains some property interest in the land taken for a public improvement, be correct, then the appellant's contention can be maintained, and benefit districts for the establishment or improvement of public streets must hereafter be confined to the abutting property thereof.

But to maintain such a doctrine would be to place an unwarranted limitation, unsupported by reason or justice, upon the principle upon which assessments for special benefits are upheld. The right to make such assessments being an exercise of the *taxing power;* and the foundation of the right, the benefit which the property assessed is supposed to receive from the expenditure of money, and having no necessary connection with the right of eminent domain or the property acquired for public use by the exercise of that power, or otherwise, the right to tax the property benefited by a public improvement of any character can not in the nature of things be dependent upon a property interest in the improvement, and we have failed to find a reported case in which it is so adjudged.

The right to tax the owner's property is not because he has a property interest in the improvement, or in the land appropriated therefor, but because his property is benefited by the improvement, to pay for which it is taxed, and for that reason only does the right exist and the power to exercise it; and it applies to his property benefited by a public park just as well as to his property benefited by a public street; as well to his

property benefited by a public street in which he has no property interest, as by one on which his property abuts—and so it has been uniformly applied. (See cases cited in respondent's brief).

It follows that the provisions in this article of the charter, by which the special benefit to the property in proximity to the park, over and above the benefits to be derived therefrom by the city generally, is to be charged against the property thus benefited, is not obnoxious to the constitutional provision which forbids the taking of private property for public use without just compensation, and this point must be ruled against the appellants.

2.    The next objection urged against the law is that it provides for the assessment of benefits against real estate without personal service of process, and that in the notice by publication provided for, the name of the person owning each piece of property, with a particular description thereof, is not required to be inserted.

Under the charter, benefits can be assessed for a public park against the real estate of the citizen only in pursuance of an ordinance setting out the metes and bounds of the district *within which* private property shall be deemed benefited by the proposed improvement, and of a judgment of the circuit court of Jackson county determining in a trial before a jury that his property in such district will in fact be benefited, and the extent of such benefit, in a proceeding in which he may be present, and be heard, and of which notice is required to be published in the newspaper at the time doing the city printing for four successive weeks, the last insertion to be not more than one week prior to the day fixed for the hearing.

The sufficiency of such a notice as the one provided for to the real estate owner within the benefit district

was specially considered and directly passed upon in the case of *St. Louis v. Ranken*, 96 Mo. 497, and approved in *Buddecke v. Ziegenhein*, 122 Mo. 239, and this point must be ruled against the appellants.

3. The substance of appellant's third and fifth objections to article 10 of the charter, is that no definite time is fixed by its provisions for the payment of the compensation awarded, but the same is left to the discretion of the court, and that the fund provided for such payment is not certainly adequate for the purpose.

It is provided in this article that payment for land acquired or taken for public parks may be made out of the general fund of the city; by the issue and sale of bonds of the city as may be provided by ordinance, and by special assessments upon the real estate situated therein found to be specially benefited thereby, and that such "special assessments may be made payable in such manner and at such time or times as may be provided by ordinance. * * * In one installment or in such number of annual installments" as shall be determined by ordinance.

The ordinance in the present instance made the special assessments payable in ten equal annual installments, and it was adjudged and decreed by the court, on the second day of November, 1895, after confirming the verdict of the jury assessing damages to appellants, that "Kansas City have and hold the land for which the damages were assessed, upon payment of the compensation assessed therefor, by the verdict aforesaid * * *" and "that Kansas City aforesaid pay the amount of benefits assessed against it; that Kansas City aforesaid recover the respective amounts assessed against the private property as set forth in the aforesaid verdict, that the several lots and parcels of private property so assessed to pay compensation by the verdict aforesaid stand severally charged and be bound for

the payment of the respective assessments and the interest that may accrue thereon; that said assessments shall be payable in ten (10) annual installments at such times and in such manner as is provided by law, the first installment thereof to be due on the thirty-first day of May next following, and the successive installments shall be due on the thirty-first day of each succeeding May until all shall have been paid, with interest as provided by law, and that all said assessments may be paid within sixty (60) days after the date of the judgment aforesaid of confirmation of the verdict aforesaid making said assessments, but if not so paid they shall bear interest at the rate of seven (7) per cent per annum from the date of said judgment of confirmation thereof until maturity, and such interest shall be due and payable annually on the thirty-first day of May of each year.

"And it is further adjudged and decreed by the court that all installments of assessments and interest on any such installments, if not paid at maturity, shall bear interest thereon at the rate of fifteen (15) per cent per annum until paid, and that if any installment of any assessment payable in more than one installment, or if interest on any installments be not paid at maturity and shall remain in default for three months thereafter, then all the unpaid installments and interest shall be collectible, together with interest thereon at the rate of fifteen (15) per cent per annum from the date of the maturity of said interest or installment in default, and special execution or executions may issue for the collection of all the installments and interest unpaid and the costs of such collection in manner and form as provided by law and the charter of Kansas City, Missouri.

"It is further adjudged and decreed by the court that Kansas City aforesaid be put in possession of said

property so taken, or any part thereof, *full compensation therefor respectively being first paid or tendered,* and that unless Kansas City aforesaid shall pay said compensation so assessed for the private property taken in pursuance thereof according to the verdict aforesaid, or tender payments within six (6) months from the date of said verdict, and judgment be not appealed from, or within six (6) months from the date of final judgment on appeal, if appealed from, then the aforesaid verdict of freeholders, the judgment and decree of court thereon, and all matters in these proceedings, shall be void.''

This judgment is a fair application of the provisions of the charter and ordinance to the subject-matter, obviates the necessity of setting their provisions out at length, and shows how they should be read in connection with the constitutional guaranty ''that private property shall not be taken or damaged for public use without just compensation;''    *    *    *    ''and until the same shall be paid to the owner or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested.''

The constitution leaves neither to the legislature of the state nor of any municipality, nor to the courts, the power to say when compensation for private property taken for public use shall be paid. *It must be paid before the property is taken,* and the preliminary proceedings, by which the amount to be paid is ascertained in the manner required by law, amount to nothing, unless they culminate in actual payment, and until they do so culminate the owner's rights remain unimpaired.

That under the charter (as in the judgment in this case), these proceedings may be kept alive for such time as may be necessary, in the ordinary course of judicial procedure, to finally determine whether the property can be taken for the given use, and how much

must be paid for it, and for a reasonable time thereafter in which to make the payment, in no way militates against the appellants' constitutional rights, and they could be no better protected if they were written in the charter and the ordinance in definite terms.

Neither are they infringed by the fact that the provisions made in the charter for providing a fund for the payment of the compensation may prove inadequate. It is the business of the city to have the funds on hand, ready to pay when it is finally ascertained by the judicial proceeding that the property may be taken, for a definite amount; and if it is not ready, and can not be paid to the owner or brought into court for his use, within a reasonable time, nothing is accomplished, and the owner remains in undisturbed possession of his property the same as if such proceedings had never been commenced.

The inconvenience arising from the institution of these proceedings and the delay or ultimate failure that may mark the course of their subsequent prosecution, are the necessary incidents of the exercise of the right of eminent domain in an orderly and judicial manner and can not be wholly provided against by legislation. *Plum v. Kansas City*, 101 Mo. 528; *Shoemaker v. United States*, 147 U. S. 321.

The fourth point urged by counsel is not in this case, and we pass to the sixth, which is next in order.

It is provided in the article that for the purpose of raising money in advance of dates when assessments for special benefits are due to pay for land taken or damaged for park purposes the council may provide by ordinance that the city treasurer shall issue park fund certificates in amount not to exceed the total amount of assessments against private property, remaining unpaid at the expiration of sixty days from the confirmation of the verdict, and that such certificates

may be registered and sold; and the charter provides that "such certificates shall be in form and for such sums as may be provided by ordinance, and shall be either payable to the order of the registered holder or be payable to bearer. Any such certificate shall entitle the owner or holder thereof to his proportionate share, as shown by such certificate, of the special assessments and the interest thereon, as the same are collected, upon which such certificates are issued, and shall so specify." "Distribution of the amounts collected upon said special assessments, including interest, shall be made to the holder or holders of such certificates *pro rata*, at least semianuually, at such specified dates as may be provided in the ordinance authorizing the issue of the same, and the holder shall receipt for such payments; and the city shall be liable on such certificate to the holders thereof for the sums collected from the special assessments upon which said certificates are issued, *and not otherwise*."

It is urged by appellant that "such certificates being obligations of the city are absolutely void, as Kansas City has already exhausted its debt-creating power."

These park certificates are issued upon judgments already obtained. The judgments are in favor of the city and collectible on execution. As the collections are made, the holders get their *pro rata* share. The city acts as agent of the holders to make these collections, and, should it refuse, doubtless could be compelled by *mandamus* to do so by those interested in their collection; but by the express terms of the charter the liability of the city to the holders is limited to the sums collected from the special assessments upon which the certificates are issued, and until such sums are received into its treasury no liability upon the part of the city accrues on account of these certificates, and by

them no debt is created within the meaning of the constitutional inhibition limiting indebtedness of municipalities. *Quill v. Indianapolis*, 124 Ind. 292; *Faller v. Heath*, 89 Ill. 296; *Fletcher v. Oshkosh*, 18 Wis. 228; *Silkman v. Milwaukee*, 31 Wis. 555; 1 Dillon on Mun. Corp. [4 Ed.], sec. 482.

The relation that the city sustains to these certificates is analogous to that sustained to special tax bills for street improvements, and as to these it has been held in this state that the cities are not liable. *Kiley v. St. Joseph*, 67 Mo. 491; *Saxton v. St. Joseph*, 60 Mo. 153.

5. The next objection urged to the article is that it violates section 17, of article 9, of the constitution "in that it confers legislative powers upon the board of park commissioners."

A careful examination of the provisions of the article fails to disclose any power of legislation in the board. They are "mere administrative officers or agencies for the performance of certain duties" in respect to the selection of places for, and the management of, public parks, subordinate to the control of the municipal council by ordinance, and are not obnoxious to the constitution as suggested in this contention. *County Court v. Griswold*, 58 Mo. 175; *Kansas City v. Smart*, 128 Mo. 272.

6. The eighth objection suggesting that the charter "attempts to regulate the practice, jurisdiction, and judicial proceedings in the state circuit courts contrary to the general laws of the state," is answered by the cases of *State ex rel. v. Field*, 99 Mo. 352, and *Kansas City ex rel. v. Scarritt*, 127 Mo. 642; and the ninth and last objection that the charter "allows the jury of freeholders to apportion benefits upon the valuations appearing on the assessor's book," is answered by the language of the provision, which is, *"if the jury shall find* that any number of tracts or parcels of land

within the benefit district are benefited ratably in pro-
portion to the assessed value thereof as shown by the
books of the assessor, *they may so assess the same,*"
and the case of *County Court v. Griswold,* 58 Mo. 198.
Under this provision the freeholders are not required
to take the assessor's book even as a "guide in the fix-
ing of the value of property to be condemned," unless
they shall *find* it is a proper guide.

After a careful consideration of all the objections
urged against the charter provisions contained in article
10 as amended, and of the many cases bearing upon
them, we fail to find any of them tenable, and the judg-
ment of the circuit court is affirmed.   All concur.