THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JOHN SPRAGUE, PLAINTIFF IN ERROR.

*Argued November 8 and 9, 1899—Decided February 26, 1900.*

1. The proof of reputation of the defendant on trial, for the qualities which would render it improbable or unlikely that the defendant committed the offence with which he is charged, must be confined to a

period prior to its commission, and it is not competent or admissible to prove by a witness, either upon his examination-in-chief or upon cross-examination or in rebuttal, the reputation of the defendant acquired subsequently to the discovery of the act constituting the offence.

2. The rule is different where the reputation for the truthfulness of the defendant or of a witness is the subject under inquiry, in order to affect the credibility of the evidence of the defendant or a witness. In such a case the reputation at the time is the test to be applied to the act of testifying and the credibility of the evidence given.

3. A motion to strike out illegally-admitted evidence and the order of the trial court striking it from the record after objection taken to its admission, its admission and exception thereto, comes too late to cure the erroneous admission if the evidence has been fully heard by the jury, and if it be harmful to, and such as will prejudice, the defendant in his trial upon the indictment.

4. Where a witness is called upon to prove the good reputation of a defendant on trial upon an indictment for an assault with intent to ravish, he cannot be permitted, against objection and exception, on cross-examination, to testify to acts of the defendant within his own knowledge, tending to show the commission of a like offence at some other time. Neither is evidence admissible and competent from such a witness, or any other witness, tending to show the commission of another offence of like character, where the offence with which he is charged is distinct from and unconnected with the other.

5. The cross-examination of a defendant who offers himself as a witness and testifies in his own behalf, on his trial upon a criminal indictment, must be limited to the subjects originated in his examination-in-chief. He is subjected to the same liabilities and the same privileges of any other witness. If, upon cross-examination, he testifies to facts and things which are collateral and immaterial to the issue, he cannot be contradicted as to those acts and things by evidence in rebuttal.

On error to the Bergen Quarter Sessions.

Before MAGIE, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and LIPPINCOTT.

For the state, *Peter W. Stagg,* prosecutor of the pleas.

For the defendant, *Hart & Hart.*

The opinion of the court was delivered by

LIPPINCOTT, J.   The defendant below, the plaintiff in error, was convicted, in the Bergen Quarter Sessions, of an assault

with intent to ravish one Annie Jackson, a single woman, on the Bay Ridge road, which runs from Rutherford to Lyndhurst, in the county of Bergen, and, upon such conviction, was sentenced to imprisonment at hard. labor for three years.

The assault took place shortly after five o'clock in the afternoon of March 30th, 1899, at or near a place on this road called " Dead Man's Corner."

At the trial Miss Annie Jackson, the complaining witness, testified that she in company with Mrs. Hyatt, was, at the time of the assault, walking together on this road on the way home from Rutherford.    They both testified that the defendant came along this road behind them, riding on his bicycle, and that as he approached them they made way for him to pass, but he dismounted and almost immediately grasped Miss Jackson around the waist and threw her down and commenced to tear her clothing.    Mrs. Hyatt testifies that she ran away a short distance and then returned, and succeeded in getting the defendant away from the complaining witness. . Both these witnesses positively identified the defendant as the person who committed the offence.    They had never known the defendant' before this time, and saw him only two or three times afterwards, and before the trial.

The defendant denied the assault, and denied that he was at the place of assault at the time the offence was committed. His defence of an *alibi* is strongly supported by many witnesses who testify that he was seen at home on the afternoon of that day, at work with his father in carting ashes, and spreading them upon the public road in front of his father's house until shortly after three o'clock.    It is in proof that then he took a ride on his bicycle, and was gone but a few minutes, when he returned with it broken, or out of order, and that he set to work to mend it, and remained constantly at home all the time until after six o'clock in the evening, when he took a dressmaker, who had been at work for his mother in the house that day, home in a carriage.    Much evidence was also adduced to show his general good reputation for peaceableness.    The defendant was a young man between seventeen and eighteen years of age.

Forty-eight errors have been assigned upon exceptions taken to the admission and rejection of evidence by the trial court.

Seven reasons for reversal have also been presented upon the entire record as brought up under section 137 of the act entitled "An act relating to courts having criminal jurisdiction, and regulating proceedings in criminal cases." *Pamph. L.* 1898, *p.* 915.

An examination of the whole case presents much doubt and difficulty upon the question whether upon the whole record the defendant, under the provisions of this act of the legislature, has not suffered manifest injury and prejudice in his trial and conviction.

But the case has been considered only in respect to the questions raised by exceptions to the admission of certain classes of evidence.

The testimony is very voluminous, much of it apparently entirely irrelevant to the trial of the issue upon the indictment, and it appears to have been by both sides, at the trial, considered with much disregard of the law relating to the admission of evidence in criminal cases.

The questions of the erroneous admission of evidence can be briefly stated and disposed of.

The defendant produced evidence to establish his good reputation for peaceableness before and up to the time of this assault. Upon this question, on cross-examination, the counsel of the state was permitted, over numerously repeated objections and exceptions upon which error has now been assigned, to show from the witnesses on this subject the reputation of the defendant acquired by him after his arrest principally from this accusation, and what others had said about the defendant after the criminal accusation had been brought against him. Much of this evidence upon cross-examination was to show what the opinion of others was in relation to his guilt or innocence of this charge, and their opinion also upon the facts of the case as understood by others, and what others have said as to their belief as to the existence of such facts as tended to throw suspicion of guilt upon the defendant, in

effect, what others in the community said as to his alleged participation in the offence for which he was on trial. The printed book shows page after page of this character of evidence admitted over objection and exception, but there is no necessity of repeating it in order to determine the contention of its inadmissibility.

There can exist no doubt whatever in law that such evidence was prejudicial to the defendant and was erroneously admitted. The evidence was hearsay as to facts and opinions, as to the guilt or innocence of the defendant, and what was said as to reputation as derived from the offence itself for which the defendant was on trial.

It is the reputation one has in the community up to the time of the commission of the offence only which is admissible. *Foulkes* v. *Sallway,* 3 *Esp. N. P.* 236.

The accusation of the crime cannot affect the reputation so far as proof of reputation of the defendant may be admissible in his defence. *Olive* v. *State,* 11 *Neb.* 1. Proof of reputation, or evidence in denial of reputation, is limited to the time of the discovery of the offence. *White* v. *Commonwealth,* 80 *Ky.* 480. Reputation acquired by the crime itself and after the commission of the offence is not admissible. *Hill* v. *State,* 35 *S. W. Rep.* 600 ; *State* v. *Fontenot,* 48 *La. Ann.* 305 ; *Carter* v. *Commonwealth,* 2 *Va. Cas.* 169 ; *People* v. *Fong Ching,* 78 *Cal.* 169 ; *Skaggs* v. *State,* 31 *Tex. Crim. Rep.* 563. And this is always the rule where the reputation to be proved is of such a character as to render it improbable that the person charged with the offence is guilty.

The rule is different where the question is the reputation of the defendant, or a witness, as to his truthfulness, in order to affect the credibility of the defendant on trial, who has offered himself as a witness, or of another witness testifying therein. The reputation of the defendant, or the witness, for truthfulness in such case at the time of the trial is admissible, for it is to the act of testifying that the reputation is then addressed, and it is to affect his present credibility in the evidence which he is giving. *Dollner* v. *Lintz,* 84 *N. Y.*

669; *Pratt* v. *State*, 19 *Ohio St.* 277; *Shuster* v. *State*, 33 *Vroom* 521, 524; 29 *Am. & Eng. Encycl. L.* 803.

Evidence of the character or reputation of the defendant in a criminal prosecution, whose character is involved otherwise than as a witness, at a time subsequent to the commission of the offence which is the subject of the investigation, is inadmissible.    5 *Am. & Eng. Encycl. L.* (*2d ed.*) 860, and cases cited.

And evidence of a bad character subsequent to the crime is not admissible.    *Whart. Cr. Evid.* (*9 ed.*), § 63.

The counsel for the defendant objected to this evidence, took exception to its admission and on two occasions moved to strike it out, but the motion was refused.    Afterwards the counsel for the state moved, also, to strike it out.    No particular part was selected to be stricken from the record, and the court, in granting the motion, said that "everything as regards the general reputation since the arrest may be stricken out."

This was a vague disposition of the error which had been committed in the admission of the evidence complained of. This evidence, it will also be perceived, was not limited to reputation since the arrest, but also covered other subjects, as has been stated.    But, admitting that it applied to such evidence as pertained to reputation since the arrest, the motion to strike it out and the action of the court on the matter came too late.    It had been admitted to the jury after repeated strenuous objection on behalf of the defendant and had been fully heard by them.    It has been allowed to stand and have its effect until the case was practically closed, and its admissibility had been persistently presented on the part of the state.    It had gone deliberately to the jury and had been fully taken into their consideration, and I cannot perceive how its harmful and prejudicial effect could be obviated or cured by having the evidence, at this stage of the proceeding, merely and formally stricken from the record.

A witness—one Hershe—was called by the defendant to testify to his good reputation.    Upon cross-examination he was asked as follows:

"*Q.* Have you not heard of thirty or forty women being insulted there by young men?"

This was objected to on the part of the defendant, but it was allowed and an exception taken, and he was permitted to say in answer:

"*A.* I have heard of their being insulted there."

And the answer was allowed to stand. This question and answer had no connection whatever with the defendant, nor was it at all material to the subject of his reputation. It was error to admit this evidence, and the fact elicited must have been prejudicial to the defendant. The fact that other women had been insulted at this place was irrelevant in this case under the most commonplace law, and the witness could not be allowed to speak as to what he had heard from others.

It was clearly error and harmful to the defendant.

The defendant was called to testify in his own behalf. Upon cross-examination he was questioned whether he had ever met other women at other times at this place. It was not attempted to show that he had ever been guilty of any similar offence at this place, by the cross-examination, and the object of the evidence is not entirely apparent. He denied having met any women at this place. He was then confronted with some women, and asked in relation to them, and as to their acts and conduct toward him, and his conduct toward them, without indicating by the question, save by insinuation, that anything criminally improper had occurred between them. This was evidence that could not have been presented by him upon his direct examination. It is doubtful if it was legal upon cross-examination, but conceding it to be so, he answered the questions, and the rule of evidence is that such facts being irrelevant and immaterial his answers must be conclusively accepted. He, like any other witness, is entitled to have his cross-examination limited to the subjects originally opened by his examination-in-chief. He subjects himself to the same liabilities, and he is entitled to the same privileges of any other witnesses. *Whart. Cr. Evid.* *(9th ed.),* § 430.

Instead of leaving the testimony to remain as he had left it upon this subject, many of these persons were called as witnesses in rebuttal in behalf of the state, and by them it was attempted to contradict his evidence in respect to these matters, and such contradiction on rebuttal was obtained from several witnesses over objection and exceptions, upon which errors have been assigned.

Clearly, it was the design of the state to impute to him by insinuation the commission, or the attempt at commission, of like offences at this place, at other times and upon other women.

Such evidence was entirely inadmissible. *Clark* v. *State,* 18 *Vroom* 556; *Myer* v. *State,* 30 *Id.* 310; *Parks* v. *State,* *Id.* 573; *Leonard* v. *State,* 31 *Id.* 8.

This evidence was highly prejudicial to the defendant. It was a denial to him of a fair trial upon the issue presented by the indictment, and that it was not erroneous cannot for a moment be contended. In fact, all that need be said in a case of this kind is that it "may have been harmful." *Ruckman* v. *Burgholtz,* 8 *Vroom* 437, 441.

This case, both as to the general character of the evidence, and the principles, upon which criminal justice is to be administered, comes fairly within the doctrine laid down in *Ryan* v. *State,* 31 *Vroom* 552; *Whart. Cr. Evid.* (9th ed.), § 65.

The judgment of the Bergen Quarter Sessions must be reversed.