Commonwealth of Pennsylvania *v.* Cohen, Appellant.

Argued September 28, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Drew, JJ.

*Roland S. Morris*, and with him *Henry W. Braude*, for appellant.

*John H. Maurer*, Assistant District Attorney, and with him *John Monaghan*, District Attorney, for appellee.

Opinion by Cunningham, J., November 20, 1931:

Appellant was convicted before a magistrate of the City of Philadelphia, under Section 3 of the Act of May 11, 1911, P. L. 275, as amended by the Act of July 11, 1923, P. L. 992, of having, upon three occa-

sions, given "false or insufficient weight" in retail sales of anthracite coal. An appeal was allowed by the quarter sessions; after a trial, de novo, before HEILIG-MAN, J., appellant was adjudged guilty in each case and sentenced to pay the fine provided for a first offense. From these sentences we have three separate appeals; as the questions involved are identical, but one opinion will be filed.

The Commonwealth charged that on December 23, 1930, Anna Beck ordered from and paid appellant for 4,000 pounds of coal; that it was weighed in her cellar within two hours after delivery and its weight found to be only 3,594 pounds, indicating a shortage of 406 pounds in this transaction. It was also charged that on January 7, 1931, Cecelia H. Ruoff ordered and paid for 4,000 pounds of coal and received only 3,683 pounds, making a shortage in that instance of 317 pounds, and that on January 9, 1931, Pauline Mahoney received insufficient weight to the extent of 265 pounds on a similar order. These purchases and tests were made at the instance of the Better Business Bureau and for the purpose of investigating the business methods of appellant. The evidence was substantially the same in each case and its character may be illustrated by reference to the testimony in the Ruoff case. It was not questioned that the customer ordered, and appellant pretended to deliver, 4,000 pounds, or that he was paid for that weight of coal. The controversy related to the accuracy of the method of weighing adopted by the Commonwealth's witnesses. The coal delivered was weighed by Thomas Golcher, who described himself as a "public weigher" of fifteen years' experience and as a disinterested party between buyer and seller, and James L. Wilmeth, Jr., a representative of the Better Business Bureau, assisted by a laborer. They used an empty sugar barrel and a standard steelyard beam scale, suspended from a joist

in the cellar. The barrel was filled and weighed as often as necessary, allowance being made for the tare weight of the barrel, chain and hooks. Golcher described the method in this language: ''We used a regular steelyard beam scale, and it is necessary to make some place to rig the scale up, on account of not using the ordinary rig with the scale. Generally the cellars are too low to put the rig in them. We put a hook in one of the rafters and suspend the beam from that hook in the rafters, and attach our regular hooks and barrel and we get the tare, the gross tare, and proceed with the weighing, the coal being shoveled into the barrel and weighed, each draft, with the barrel full. ...... We attach the hook on one side, and whenever we weighed the barrel the laborer raised the barrel from the end and attaches the hook on that side and the opposite side of the barrel, and by pulling the beam down, that relieves the barrel from the floor ......giving the barrel a space of two or three inches from the floor.'' There was evidence that the scales used had been tested in January, 1930, by the Howe Scale Company and frequently by the witnesses through the use of United States Standard Weights, but not by the official inspector hereinafter mentioned.

Appellant called Daniel L. Daly as an expert on scales; he questioned the accuracy of a steelyard beam scale when suspended from a joist. His criticism was that there was danger of inaccuracy in the use of a scale of this type unless ''there was a setup with an arrow to get a center line and maintain the center of gravity between the two bodies.'' On the other hand there was testimony for the Commonwealth in rebuttal that the arrow on the scale used in this instance showed the beam to be level.

There was, therefore, evidence sufficient, if believed, to support the conclusions of the trial judge unless, as contended in behalf of appellant, a special rule,

relative to the quality and quantity of evidence essential to sustain a conviction of giving insufficient weight in the sale of anthracite coal in Philadelphia, should be applied.

The contention is made that before a defendant can properly be convicted of that offense it should appear from the evidence of the Commonwealth either that the coal had been weighed by an official public weighmaster upon stationary scales designated by the court of quarter sessions under the provisions of the Act of June 1, 1911, P. L. 533, or at least that the scales used had been tested and sealed by a city inspector of weights and measures appointed under the provisions of the Act of May 11, 1911, supra, and its amendments—under the third section of which this prosecution was instituted. It is provided in the Act of June 1, 1911, supra, that it shall become operative upon petition to the court of quarter sessions of twenty-five citizens, but appellant made no effort to show it ever became effective in the City of Philadelphia. As suggested in the opinion of the court below, the average householder has no means of weighing a ton of coal in his cellar and the act was evidently intended to afford an opportunity for the weighing of anthracite coal upon officially designated scales at the instance and expense of the buyer. In any event it is expressly provided that this method of weighing "shall not be binding on any purchaser of coal if he shall not deem it convenient, satisfactory or expeditious." We may therefore lay aside this act as inapplicable to this case.

Nor is there anything in the Act of May 11, 1911, supra, or its amendments, indicating that the inspectors, therein provided for, are specially charged with the duty of instituting prosecutions for the offense of giving insufficient weight. Their primary duty is "to test all instruments and devices used in weighing or

measuring anything sold or to be sold" and to condemn and "seize any false or illegal instrument or device used, or intended to be used, in weighing or measuring." It is also contemplated that the inspectors shall institute prosecutions and report the result thereof but there is no intimation that they should have exclusive authority so to do. Even where a state officer or bureau has been specially charged with the enforcement of a statute we have frequently held that such directions did not deprive any citizen of the right to institute prosecutions for violations: Com. v. Crowl, 52 Pa. Superior Ct. 539; Com. v. Hamilton, 74 Pa. Superior Ct. 419. The only fact in issue here was whether appellant had given the weight for which he was paid. The allegation of shortage could be established by any competent evidence; it was not essential that the insufficiency of the weight be proved by the testimony of an official weigh-master or inspector. In the opinion supporting the judgment the trial judge stated that after a careful consideration of all the testimony he had no doubt "the evidence fully indicated that there was a shortage of coal in [each] case." Upon a review of the entire record we are satisfied there was evidence legally competent to sustain this conclusion.

The final complaint of appellant is that the trial judge "refused to hear any and all evidence offered by the defendant as to his good character and general reputation." The basis for this complaint is the following excerpt from the transcript of the testimony of a witness called on behalf of appellant: "Q. Have you done business with this defendant? A. I have. Q. For how long? A. Five years. The Court: What is the purpose of this? Mr. White: To show general business reputation. Mr. Maurer: I object. I do not see that that is relevant in this case. The Court: The

objection is sustained as to any reputation this defendant has.''

The official stenographer did not note an exception to the ruling sustaining the objection of the commonwealth. Counsel for appellant concede they made no request that an exception be noted, but, citing the first section of the Act of May 11, 1911, P. L. 279, (as amended by the Act of June 5, 1913, P.L. 421), and the sixth section thereof, as well as the Act of April 18, 1919, P. L. 72, contend we should nevertheless review this ruling. The Act of 1911, as amended by that of 1913, still requires that ''immediately succeeding such ruling the official stenographer shall note such exception;'' counsel for appellant did not avail themselves of the opportunity afforded by section 4 to have any omission from the record corrected. As stated by this court in Lodge v. Stone, 85 Pa. Superior Ct. 164, 166, it is the duty of counsel to direct the stenographer to note an exception when a ruling has been made against him, if he intends to press it as error. Here, the decision of the court which the sixth section provides shall be reviewable, although no exception may have been taken thereto, is the finding that appellant had committed a violation of the statute. Moreover, it is not clear that appellant was entitled to give evidence of his previous good reputation. Where the intent with which the act charged was done is of the essence of the issue such evidence is admissible. The Commonwealth was not required, under this statute, to show guilty knowledge and criminal intent in the commission of the act declared therein to be a penal offense; this seems to have been the ground for the ruling. Nor was the offer sufficiently specific; it was to show merely appellant's ''general business reputation.'' Evidence of this kind should be directed and limited to that particular trait of character which would indicate the

improbability that defendant would commit the offense charged—here, for instance, honesty. The offer did not indicate clearly that it was proposed to show appellant's reputation for honesty in business as distinguished from a reputation for business acumen in anticipating the rise and fall of prices or in estimating accurately the supply of and demand for the commodity dealt in, or other business qualifications.

We are not persuaded that any of the assignments should be sustained and they are therefore severally overruled.

The judgment involved in each appeal is affirmed.