451 A.2d 489

**COMMONWEALTH of Pennsylvania**

v.

**Joseph BOSSICK, Appellant.**

Superior Court of Pennsylvania.

Submitted June 23, 1982.

Filed Oct. 1, 1982.

Petition for Allowance of Appeal Denied Dec. 22, 1982.

198

William R. Lee, Scranton, for appellant.

Ernest D. Preate, Jr., District Attorney, Lackawanna, for Commonwealth, appellee.

Before WICKERSHAM, McEWEN and LIPEZ, JJ.

McEWEN, Judge:

We here consider an appeal from the judgment of sentence imposed after appellant was convicted by a jury of criminal conspiracy. The jury found that appellant, who at the time of the crime was an inmate at the Lackawanna County Prison, had conspired with other inmates to effect the death by hanging of another prisoner, Clifford Doolittle. We affirm.

The evidence at trial established that on November 30, 1978, appellant was committed to the Lackawanna County Prison to serve a sentence for a criminal attempt charge. Another inmate at the prison, Thaddeus Pitta, testified that several times in the weeks preceding the death of Clifford Doolittle, appellant stated: "We have to get a body. We need a body here in this jail. We got to hang somebody and blame it on a snitch." Douglas Palmiter, a fellow inmate, also testified that on numerous occasions prior to the death of Doolittle, appellant stated he wanted to find a stiff and get that stiff hung. Palmiter also testified that on the night of February 4, 1979, he and appellant met with fellow inmates Martin, Karabin, Benjamin and Pitta in the cell of

Martin. Clifford Doolittle, who was awaiting trial for murder, was introduced to the group. A discussion ensued concerning the possible results of the forthcoming trial of Doolittle, during which the inmates explained to Doolittle the "old Farview trick"—faking a suicide so as to be sent to Farview, a facility for the criminally insane, and thereby avoid being prosecuted for murder. After Doolittle left the cell, appellant suggested that the inmates hold a "mock trial" for Doolittle on the charges confronting him.

The next night, Monday, February 5, 1979, Bossick, Martin and Karabin informed Doolittle that his trial would be held in Bossick's cell. At the mock trial, Doolittle was questioned about his crime and at the conclusion of the trial Karabin pointed his hand at Doolittle and stated, "I sentence you to death." Following the mock trial, Martin stated that Karabin and Bossick were scaring Doolittle into the "Farview trick" and that "Clifford Doolittle thinks we are going to cut him down when we get him in. We're not going to cut him down. We're going to let the son-of-a-bitch hang."

The next morning Karabin, Martin and appellant conferred with Doolittle. Palmiter overheard them telling Doolittle, "to go down to his cell and that they were going to fake the hanging." According to Palmiter, Doolittle entered his cell and Karabin and Martin followed him into the cell and remained in the cell for approximately ten minutes. Martin and Karabin then went to Martin's cell before returning in approximately fifteen minutes to Doolittle's cell. Martin opened the door to Doolittle's cell, looked in, then closed the cell door, looked at appellant who was standing on the second tier and nodded at appellant before returning to his cell. A prison guard testified that Martin notified him of the hanging and when the guard went to Doolittle's cell, Doolittle was already dead by reason of the hanging.

Palmiter testified that on the night of the murder he discussed the hanging with appellant, Karabin and Martin and that Karabin stated that while he and Martin were in Doolittle's cell, they tied up a sheet and got Doolittle in position. Karabin then held Doolittle by the heels until just

before he passed out, at which time Karabin dropped him and they let him hang.

The appellant presents the following questions for review: Whether the evidence was insufficient to convict the defendant of criminal conspiracy?

Whether defendant's proposed voir dire questions were improperly excluded?

Whether the lower court erred in evidentiary rulings warranting a new trial?

Whether defense counsel was ineffective necessitating a new trial since prior criminal convictions of defendant and defense witnesses not involving crimes of crimen falsi were testified to?

Whether defendant's after discovered evidence warrants a new trial or in the alternative a remand to the lower court to complete the record?

Whether a new trial should have been granted because the district attorney in his closing argument asked the jury to draw an unwarranted and improper inference from the evidence?

Whether the court erred in denying counsel leave to withdraw, warranting a new trial?

Whether the court erred in admitting into evidence defendant's statements allegedly made prior to the formation of the conspiracy?

Whether the court erred in allowing testimony that a Commonwealth witness was assaulted by defendant?

We have carefully reviewed the briefs of the parties as well as the entire record and conclude that the distinguished Lackawanna County Common Pleas Court Judge James M. Munley has so thoroughly addressed the contentions that we are able to limit our discussion to but a few of the issues presented.

Appellant first argues that the evidence was insufficient to convict him of criminal conspiracy. Specifically, appellant contends that the evidence does not prove that he agreed to participate in the ruse that was to culminate in

the hanging of Clifford Doolittle. Rather, appellant argues that at most the evidence proves that he participated in a mock trial of the decedent and that if there was a conspiracy among inmates of the prison, appellant was not part of that conspiracy.

The law is clear that the crime of conspiracy is established when the prosecution proves the involvement of the appellant in an agreement to accomplish a criminal objective and the commission of an overt act in pursuance of the conspiracy. 18 Pa.C.S.A. § 903. The evidence needed to prove a conspiracy must show more than a mere association, but a "conspiracy may be inferentially established by showing the relation, conduct or circumstances of the parties, and the overt acts on the part of the co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed." *Commonwealth v. Lewis,* 276 Pa.Super. 451, 457, 419 A.2d 544, 547 (1980); citing *Commonwealth v. Henderson,* 249 Pa.Super. 472, 483, 378 A.2d 393, 398 (1977) and *Commonwealth v. Horvath,* 187 Pa.Super. 206, 211, 144 A.2d 489, 492 (1958).

The evidence is more than sufficient to show the involvement of the appellant in an agreement to accomplish a criminal objective and the commission of an overt act in pursuance of the conspiracy to commit murder.

Appellant further asserts that his lawyer, who represented appellant both at the trial and on this appeal, was ineffective. Defense counsel, who first asserted his own ineffectiveness in the post-trial motions, argues that he was ineffective when he sought to inform the jury why appellant and other defense witnesses were confined and thereby during direct examination elicited the following information concerning their criminal convictions:

George Wayman: parole violation, drug charges, larceny, assault and robbery.

Thomas Padden: parole violation and burglary.

Anthony Mulea: gun charge, receipt of stolen property, burglary and car theft.

Robert Lombardi: robbery and manslaughter.

Dennis Stonestreet: armed robbery and escape.

Gilbert Dominquez: felonious restraint.

Joseph Bossick: parole violation, criminal attempt, criminal trespass and burglary.

■ It is clearly established that any judicial study of the claim of ineffectiveness begins with a determination of whether the claim is of arguable merit. If the underlying claim is of arguable merit, we must then determine whether the strategy chosen by the lawyer had some reasonable basis designed to effectuate the interest of the client. *Commonwealth v. Evans*, 489 Pa. 85, 94, 413 A.2d 1025, 1028 (1980); *Commonwealth v. Pittman*, 295 Pa.Super. 234, 441 A.2d 436 (1982).

■ When the claim of ineffectiveness of counsel is expressed by appellate counsel who also represented the defendant at trial, our appellate courts: (1) return the case to the Common Pleas Court for a new trial whenever it is apparent that the ineffectiveness composes reversible error; or (2) remand the case to the Common Pleas Court for appointment of new counsel and a hearing whenever the reversible error is not apparent. The rationale for such remand is a reservation that arises concerning the zeal that counsel is able to supply to an argument that he was ineffective.[1] *Commonwealth v. Fox*, 476 Pa. 475, 383 A.2d 199 (1978); *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975).

Surely, however, sound practice does not require a remand to the Common Pleas Court for an appointment of counsel and further hearing in those cases where the most intense display of zeal and fervor by the most persuasive of counsel cannot project ineffectiveness of arguable merit; surely, sound practice requires remand for appointment of counsel

1. Such insight is a welcome display of discernment. It would be further realistic to accept the proposition that while a claim by trial counsel of his own ineffectiveness can be quite a sincere plea by trial counsel whose fervor has been replaced by remorse, it can also be a contrived assertion by counsel motivated by improper ends.

and further hearing only in those cases where the claimed ineffectiveness has arguable merit. Just as appellate study of a record in some cases may permit only a conclusion that the error is overwhelming and thereby reversible, so appellate study in other cases may well only permit of a conclusion that the claim of error lacks merit under any circumstances.[2]

■ We, therefore, rule that where it is apparent to the appellate court that there is no arguable merit to a claim of ineffectiveness by appellate counsel who also served as trial counsel, the appellate court need not remand to the Common Pleas Court but may provide for final dismissal of the appeal.[3]

■ In the instant case the ineffectiveness—which is not only claimed but acknowledged—has no arguable merit. Counsel asserts that he erred in his decision to elicit during the examination of appellant and other defense witnesses testimony concerning their criminal records. Since the county prison was the situs where the conspiracy was conceived, nurtured and implemented by inmates imprisoned there, the jurors necessarily realized appellant and his witnesses had been implicated in criminal activity. Counsel cannot be considered to have been ineffective for soliciting testimony concerning the nature of their criminal behavior; rather, under the circumstances, counsel would have been deemed to have been ineffective had he refrained from

**2.** So clearly also, must there remain available to an appellate court the device of remand to the trial court for the appointment of new counsel so as to enable a determination in that court of whether there is substance to a claim or acknowledgement of ineffectiveness.

**3.** It is to be noted that our eminent colleague, Judge Wickersham, by his dissent in *Commonwealth v. Viall,* 278 Pa.Super. 613, 420 A.2d 710 (1980) evinced an inclination to accept the principle here announced. There, the appellate representative of the public defender staff claimed trial ineffectiveness of another member of that same staff. Judge Wickersham stated in his dissent: "the failure to object to the alleged hearsay testimony was not error on the part of trial counsel as the testimony added virtually nothing to the case. To remand under these circumstances is to further waste judicial time and energy. I would affirm the judgment of sentence." *Id.,* 278 Pa.Superior Ct. at 620, 420 A.2d at 713.

presenting such information since it would have been tactically unwise for counsel to have left to the District Attorney the role of eliciting such information. We are left to conclude:

No amount of zeal or skill of persuasion could convince us that trial counsel has been ineffective in the manner argued, so that, therefore, there is no arguable merit to the claimed ineffectiveness.

Even if there had been arguable merit, the course actually pursued at trial by counsel in this case would have been a recommended tactic, however solemnly counsel may now pronounce his mea culpa.

While the conclusion we reach on this issue does not preclude appellant from the initiation through new counsel of proceedings under the Post Conviction Hearing Act, it does eliminate this particular claim of ineffectiveness in any such proceeding.

Appellant next argues that the trial judge made "numerous errors" when ruling upon evidentiary matters and that, therefore, appellant is entitled to a new trial. The brief of appellant merely states that the "defendant asserts numerous errors by the court in rulings upon evidentiary matters" and simply refers to sixty-one pages of the trial transcript where alleged errors appear. Appellant does not designate the ruling he questions, let alone the nature of the error.[4]

We rely for rejection of this assertion upon the statement of this court in *Commonwealth v. Sanford,* 299 Pa.Super. 64, 445 A.2d 149 (1982): "We decline to become appellant's counsel. When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof." *Id.,* 299 Pa.Superior Ct. at 67, 445 A.2d at 150. We are, in fact, unable to address the propriety of these rulings. This assertion is denied.

4. The post-trial motions filed by the appellant list twenty-nine alleged errors committed by the trial judge on evidentiary questions.

■ Appellant next argues that he is entitled to a new trial on the basis of evidence that was discovered after the trial. Although appellant contends before this Court that six specific evidentiary matters were discovered after the trial and that this evidence meets the requirements for the grant of a new trial, the trial court has only been able to rule on three of these contentions.[5] The remaining three contentions were first raised in an amended additional motion for new trial on the basis of after-discovered evidence and were not ruled upon by the trial judge because the appellant had already filed his appeal to this Court.[6] Thus, the three after-discovered issues that were not ruled upon by the trial court are not properly before us for review. The trial judge properly rejected the initial three such contentions.

Appellant further asserts that certain of his proposed voir dire questions were improperly excluded. Although appellant states the numbers of the proposed questions that the trial judge would not allow defense counsel to ask, the content of those questions does not appear in the record nor does appellant explain the content of those questions.

■ The record reflects that the trial judge conducted his own voir dire examination and that the defense counsel was permitted to extensively question the proposed jurors. The scope of voir dire examination rests in the sound discretion of the trial judge and the decision of the trial judge will not be reversed in the absence of palpable error. *Commonwealth v. Holland,* 298 Pa.Super. 289, 444 A.2d 1179 (1982); *Commonwealth v. Layman,* 290 Pa.Super. 244, 434 A.2d 735 (1981). The appellant in this case has not pointed to any specific omission by the trial judge which would entitle the appellant to relief and, in light of the extensive questioning by the trial judge, prosecutor and the defense attorney, we

**5.** The after-discovered evidence which the trial court did consider were pictures of the jail cell of the victim and two different statements given after trial which reflected on the credibility of the Commonwealth witnesses.

**6.** Pennsylvania Rule of Appellate Procedure 1701.

decide that appellant has not alleged any error in the voir dire examination which would entitle him to relief.

The remaining questions have been thoroughly examined by the able trial judge and we agree there is no merit to those contentions.

Judgment of sentence affirmed.