463 A.2d 1073

**COMMONWEALTH of Pennsylvania**

v.

**William LUTHER, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 23, 1981.

Filed July 15, 1983.

42

Victor Dell'Alba, York, for appellant.

Sheryl Ann Dorney, Assistant District Attorney, York, submitted a brief on behalf of Com., appellee.

Before BROSKY, McEWEN and BECK, JJ.

McEWEN, Judge:

William Luther was tried by a jury and convicted of rape. He has taken this appeal from the judgment of sentence.[1] Appellant contends solely that trial counsel was ineffective for failing to fully advise him prior to his trial of the importance of character witnesses and for failing to call character witnesses on his behalf at the trial. We reverse and remand for a new trial.

The complainant was the principal prosecution witness. She was a 25 year old woman living separate and apart from her husband with her eight year old son and her sister

---

1. Although trial counsel filed post-trial motions in arrest of judgment and for a new trial after the entry of the verdict, he subsequently withdrew them when appellant dismissed him and retained new counsel. New counsel then filed post-trial motions and subsequently filed an application requesting that argument upon the post-verdict motions be consolidated with a hearing upon the alleged ineffectiveness of trial counsel for failing to apprise appellant of his right to present character testimony and for failing to explain the nature and weight of such testimony to appellant. The trial court, after a hearing, entered an order which denied the motion for new trial and the motion in arrest of judgment and further denied the motion that sought relief on grounds of ineffectiveness of trial counsel. Appellant was subsequently sentenced to a term of imprisonment of not less than three nor more than six years.

in a small apartment. The sister of the complainant was not present in the apartment during the occurrence. The son of the complainant was in a bedroom adjacent to the bedroom of the mother. The complainant indicated that she had known appellant, an 18 year old high school student who was also gainfully employed, for one or two years, and admitted him to her apartment at approximately 6:20 a.m. on November 16, 1979, after being awakened by knocking on the apartment door. When she observed that appellant appeared to have been drinking, she told him that he could "sleep it off on the couch" in the living room. Then, after stopping in the bathroom, she went to her bedroom which was separated from the living room only by a curtain. After a few minutes, appellant asked her for a knife so that he could cut his shoelaces and she responded that one could be found in the kitchen. The complainant testified that she heard nothing for a time, until appellant appeared in her bedroom, clad only in his undershorts with a knife in hand, and proceeded to get on top of her while holding the knife to her throat. She testified that at this point in the encounter her son was beginning to awaken and inquired who was with his mother and that appellant commanded her to "keep him quiet". She stated that she told appellant that "Billy won't be quiet" and gave her son permission to watch cartoons, telling him "to get dressed, get breakfast, get some cereal"; it was necessary for the boy to pass through the bedroom of his mother to do so. She testified that it was after her son was in the living room that appellant, while holding the knife at her throat, removed her panties and raped her and that the incident lasted approximately one hour, during which he penetrated her twice and threatened both herself and her son. She stated that when the sexual encounter had concluded, she directed her son to bring the clothes of appellant from the living room to the bedroom and that while appellant was dressing, he kept the knife next to him. She testified that when appellant completed dressing, he went into the kitchen but did not replace the knife but instead wrapped a paper towel around his hand and "must have slipped the knife up his sleeve." The

complainant then testified that she ordered him to leave and said "don't ever come back here again, because if you do I am going to kill you"; that appellant said nothing as he left the apartment; and that she soon thereafter left the apartment with her son, delivered him to the school playground and went to the police station to report the incident.

The eight year old son of the victim testified that he saw appellant, with whom he also was acquainted, in bed on top of his mother and that he heard her "crying" on the two occasions that he passed through her bedroom that morning. He further testified that he brought the clothes of appellant to him from the living room at the request of his mother and, that he and his mother left the apartment immediately after appellant had departed.

The testimony of appellant concerning the incident was essentially that the intercourse was not forcible but was consensual and that the complainant exhibited a drastic change of attitude following the sexual intercourse. He testified that after finishing his shift at his place of employment at midnight, he and two friends went to a bar until 2:00 a.m., when the group proceeded to the house of one of them where he had several beers before departing between 3:30 and 4:00 a.m. He then went to the home of his mother and when he determined that nobody was awake, drove to the residence of the complainant. He testified that he did so because the complainant had, when they met at a shopping mall on the previous Sunday, invited him to visit her any night the following week except Wednesday. The appellant testified that the complainant admitted him to her home and told him to sit down and make himself comfortable while she was out of the room; that when she returned to the room, she helped him undress before they proceeded to her bedroom and into her bed. He testified that he took his underwear off after they were in bed and that, after assisting her in undressing, they engaged in consensual sexual intercourse. Appellant testified that when her son awoke and inquired as to who was in the room, she identified him; that the complainant at times during the course of

the encounter told her son to be quiet and to go back to sleep but indicated that complainant eventually gave her son permission to leave his bed and to watch television in the living room. As the boy did so, he passed through the bedroom where his mother and the appellant were in bed. When asked on cross-examination about the testimony of the son that his mother was crying during the sexual encounter, appellant testified that the complainant was not crying and, on redirect, stated that she was making sounds normally associated with sexual intercourse. Appellant testified that later, while the complainant was out of the bed and getting dressed and appellant was still in the bed, the complainant directed the boy to bring the clothes of appellant from the living room to the bedroom. After he arose and had dressed, the complainant told him "to get the f_____ out" and when he expressed confusion, she repeated her initial declaration. He testified that he then left but denied that he had ever requested a knife or that he had taken a butcher knife from the kitchen and also denied that he had a towel wrapped around his hand. He further testified that the complainant and her son left the apartment immediately after he did and that he observed them getting into their vehicle as he was driving away in his car.

The physician who examined the complainant at a local hospital shortly after the incident testified that although his examination revealed the vaginal area was hypertrophic or reddened, he did not find any indication of non-consensual or forced intercourse and specifically stated that he found no bruises, cuts or scratches on any part of her body including her neck. A laboratory report established the presence of sperm in the vagina of complainant.

The two arresting officers testified that after they took appellant into custody at his high school, he made a separate statement to each of them in which he admitted having had sexual intercourse with the complainant but in which he denied having raped her. The two statements were substantially the same and indicated that complainant had enticed appellant to engage in sexual relations but that

after the son of complainant had brought the clothes of appellant into the bedroom, the complainant severely rebuked appellant and, as he departed, warned him not to return.

Trial counsel for appellant presented only the testimony of the appellant and of his mother, who testified that it was the practice of her son to visit her at unusual hours. No character witnesses were called on behalf of appellant.

As we have earlier noted, appellant asserts in this appeal from the judgment of sentence that his trial counsel was ineffective by reason of a failure to call character witnesses on his behalf during the trial and by reason of a failure to fully advise him prior to the trial of the importance of obtaining character witnesses. It may be seen from the preceding extended summary of the testimony presented at the trial that the credibility of the parties was a quite basic and fundamental issue. Our review of the record makes clear that as a result of the careful direction of the distinguished Judge Emanuel A. Cassamatis the trial of this serious case involving so sensitive an issue was not subjected to the stress of emotional turmoil but was conducted in an exemplary and fair fashion. Nevertheless, our review of the testimony presented at the trial and at the post-trial hearing compels us to agree with the assertion of appellant that his counsel was ineffective. As a result, we reverse the judgment of sentence and remand for a new trial.

■ It is well settled that "[w]hen confronted with a claim of ineffective assistance of counsel, we must first ascertain whether the issue underlying the charge of ineffectiveness is of arguable merit, and if so, it must be determined whether the course chosen by counsel had some reasonable basis to effectuate his client's interest." *Commonwealth v. Pittman*, 295 Pa.Super. 234, 237, 441 A.2d 436, 437 (1982) (citations omitted). *See also Commonwealth v. McKnight*, 307 Pa.Super. 213, 453 A.2d 1 (1982); *Commonwealth v. Bossick*, 305 Pa.Super. 196, 451 A.2d 489 (1982).

 It has long been the law in Pennsylvania that an individual on trial for an offense against the criminal law is permitted to introduce evidence of his good reputation in any respect which has "proper relation to the subject matter" of the charge at issue. *Commonwealth v. Castellana,* 277 Pa. 117, 122, 121 A. 50, 51 (1923) (quoting *Cathcart v. Commonwealth,* 37 Pa. 108, 111 (1860)). *See Commonwealth v. Stefanowicz,* 118 Pa.Super. 79, 81, 179 A. 770, 771 (1935). Such evidence has been allowed on a theory that general reputation reflects the character of the individual and a defendant in a criminal case is permitted to prove his good character in order to negate his participation in the offense charged. *See McCormick on Evidence,* § 191, p. 454 (2d ed. 1972). *Commonwealth v. Sampson,* 445 Pa. 558, 285 A.2d 480 (1972). The rationale for the admission of character testimony is that an accused may not be able to produce any other evidence to exculpate himself from the charge he faces except his own oath and evidence of good character. *Commonwealth v. Castellana, supra.*

 It is clearly established that evidence of good character is to be regarded as evidence of substantive fact just as any other evidence tending to establish innocence and may be considered by the jury in connection with all of the evidence presented in the case on the general issue of guilt or innocence. *See Commonwealth v. Holland,* 480 Pa. 202, 389 A.2d 1026 (1978); *Commonwealth v. Stoner,* 265 Pa. 139, 108 A. 624 (1919). "Evidence of good character is substantive and positive evidence, not a mere make weight to be considered in a doubtful case, and, ... is an independent factor which may of itself engender reasonable doubt or produce a conclusion of innocence." *Commonwealth v. Gaines,* 167 Pa.Super. 485, 492, 75 A.2d 617, 620 (1950) (quoting *Commonwealth v. Padden,* 160 Pa.Super. 269, 275, 50 A.2d 722, 725 (1947)). *See Commonwealth v. Cleary,* 135 Pa. 64, 19 A. 1017 (1890); *Commonwealth v. Goodman,* 182 Pa.Super. 205, 126 A.2d 763 (1956); *Commonwealth v. Kohl,* 164 Pa.Super. 630, 67 A.2d 451 (1956). Evidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputa-

tion for the particular trait or traits of character involved in the commission of the crime charged. *Commonwealth v. Thomas*, 282 Pa. 20, 22, 127 A. 427, 428 (1925); *Commonwealth v. Garanchoskie*, 251 Pa. 247, 252, 96 A. 513, 514 (1916); *Commonwealth v. Colandro*, 231 Pa. 343, 355, 80 A. 571, 575 (1911); *Commonwealth v. Hurt*, 163 Pa.Super. 232, 235–36, 60 A.2d 828, 830 (1948); *Commonwealth v. Stefanowicz, supra* 118 Pa.Super. at 81, 179 A. at 771; *Commonwealth v. Cohen*, 103 Pa.Super. 496, 502, 157 A. 216, 218 (1931); *Commonwealth v. Tkech*, 97 Pa.Super. 489, 490 (1929). The cross-examination of such witnesses by the Commonwealth must be limited to the same traits. *Commonwealth v. Hurt, supra; Commonwealth v. Wiswesser*, 124 Pa.Super. 251, 262, 188 A. 604, 610 (1936). Such evidence must relate to a period at or about the time the offense was committed, *Commonwealth v. White*, 271 Pa. 584, 587, 115 A. 870, 871 (1922), and must be "established by testimony of witnesses as to the *community* opinion of the individual in question, not through specific acts or mere rumor". *Commonwealth v. Boone*, 467 Pa. 168, 180, 354 A.2d 898, 904 (1975) (emphasis in original).

██ In a rape case, evidence of the character of the defendant would be limited to presentation of testimony concerning his general reputation in the community with regard to such traits as non-violence or peaceableness, quietness, good moral character, chastity, and disposition to observe good order. *See Commonwealth v. Stefanowicz, supra* 118 Pa.Super. at 82, 179 A. at 771. *See also State v. Sprague*, 64 N.J.Law, 419, 45 A. 788 (1900); *State v. Lee*, 22 Minn. 407, 21 Am.Rep. 769 (1876); *Lincecum v. State*, 29 Tex.App. 328, 15 S.W. 818 (1890) (proof of quiet and peaceful character of defendant admissible in defense to indictment for rape.)

This court has made clear that "[i]n a case ... where intent and credibility are decisive factors leading to either acquittal or conviction, the accused's reputation is of paramount importance. Indeed, evidence of good character may, in spite of all evidence to the contrary, raise a reasonable doubt in the minds of the jury." *Commonwealth v.*

*Shapiro,* 223 Pa.Super. 15, 19–20, 297 A.2d 161, 163 (1972). *Accord, Commonwealth v. Stoner, supra; Commonwealth v. Holland, supra. See State v. Gambutti,* 36 N.J.Super. 219, 232, 115 A.2d 136, 143 (1955). (The court stated, in prosecution for sex offense, that where there are two direct witnesses involved, complainant and defendant, reputation evidence may well take on significance beyond that which a jury might accord it in an ordinary criminal trial).

We, therefore, conclude that there is arguable merit to the claim of ineffectiveness and proceed to a study of whether there was any reasonable basis for the failure of trial counsel to provide for the presentation of character testimony.

The recurring and primary reason provided by counsel for his decision not to call character witnesses at the trial, and a theme which pervades his entire testimony at the post-trial hearing is that appellant had not provided trial counsel with the names of potential character witnesses prior to the trial. Trial counsel provided a further rationale in an attempt to justify the failure to present character testimony: (1) that the leisure time activities of appellant included underage drinking and marijuana smoking, that appellant had been suspended from high school and that he had lost his job prior to the trial; (2) that there would be a danger that such unfavorable evidence would be elicited on cross-examination of any potential character witnesses; and (3) that such potential harmful testimony from the use of character witnesses would outweigh any possible advantage of presenting such testimony. We hold these reasons are not sufficiently compelling to constitute a reasonable basis for his decision not to present character testimony in a case: (1) where the credibility of the complainant is so crucial an issue; (2) where the complainant and accused similarly describe the events immediately preceding the occurrence; (3) where the evidence of force is not objective; (4) where the corroboration of the claim of force is not substantial; and (5) where the accused is a young man with no prior criminal record.

Trial counsel testified that he did, in fact, discuss with appellant on one occasion the possibility of presenting character testimony at trial and that he then explained to appellant that the primary usefulness of calling character witnesses was to present testimony that he was "a good guy and not the kind of individual who would commit a violent crime such as rape." Trial counsel admits that he did not pursue this potential line of defense in any way prior to the trial, despite the fact that appellant initially indicated to his counsel that there would be such people who could testify as character witnesses on his behalf. The testimony of trial counsel reveals that the discussion was overshadowed by numerous discussions as to the permissibility of calling character witnesses to impugn the chastity of the victim. Counsel never requested that appellant provide a list of names of potential character witnesses prior to the trial and, therefore, counsel made no effort to interview any such potential witnesses so as to prepare such testimony for presentation at the trial in the event that such a strategy might seem prudent.[2] Trial counsel claimed at the post-trial hearing that it was during the course of the trial, following the testimony of the victim, that he decided not to call character witnesses to testify on behalf of appellant and, instead, decided to highlight the "shakiness" of the victim's testimony. Nevertheless, it is clear from a review of the record that his decision was not based upon a careful selection between available alternatives—e.g. consideration of the relative value of presenting character testimony through ascertained potential witnesses as opposed to the absence of such testimony—but was essentially grounded upon the fact that, prior to trial, he had failed to identify, interview, select and prepare any potential character witnesses. We further observe that the logic of the rationale of trial counsel for foregoing the presentation of character

2. At the post-trial evidentiary hearing appellant produced the names of nine potential character witnesses who stated that they would have been willing to testify at his trial and would be willing to testify on his behalf at a future trial.

testimony is questionable. Certainly the declared strategy of trial counsel to concentrate upon the "shakiness" of the victim's testimony would have been substantially aided by the presentation of testimony upon the ·character of appellant.

▮ Nor do we accept as justification for his decision the rationale of trial counsel that the presentation of character testimony would have produced more harm than benefit. First, appellant did not have a criminal record which might have been the basis of unfavorable cross-examination by the Commonwealth.[3] Second, the fear of trial counsel that the cross-examination by character witnesses would reveal appellant had been suspended from high school, had lost his

---

**3.** It is appropriate that we provide mention of two decisions quite relevant to this issue even though neither forms any basis for our decision since they were pronounced subsequent to the trial of appellant. *Commonwealth v. Scott,* 496 Pa. 188, 436 A.2d 607 (1981); *Commonwealth v. Fawcett,* 297 Pa.Super. 379, 443 A.2d 1172 (1982). We stated in *Fawcett, supra,* 297 Pa.Superior Ct. at 385, 443 A.2d at 1175:

> Until recently, when a defendant has introduced evidence of his own good character, the Commonwealth could then cross-examine the character witness as to whether or not he or she had ever heard persons in the neighborhood attribute particular offenses to the defendant, *Commonwealth v. Amos,* 445 Pa. 297, 300, 284 A.2d 748, 750 (1971); *Commonwealth v. Jenkins,* 413 Pa. 606, 607–608, 198 A.2d 497, 498 (1964). The cross-examination, however, was required to pertain to offenses which related to the character trait vouched for on direct examination. *Commonwealth v. Becker,* 326 Pa. 105, 116, 191 A. 351, 357 (1937); *Commonwealth v. Thomas,* 282 Pa. 20, 24, 127 A. 427, 428 (1925); *Commonwealth v. Colandro,* 231 Pa. 343, 355, 80 A. 571, 575–576 (1911); *Commonwealth v. Hurt,* 163 Pa.Super. 232, 236, 60 A.2d 828, 830 (1948); *McCormick on Evidence,* § 191 n. 73 (2d Ed.1972).

We further observed in *Fawcett, supra,* that:

> In *Commonwealth v. Scott,* 496 Pa. 188, 436 A.2d 607 (1981), ... the Supreme Court abrogated the rule which permitted character witnesses to be cross-examined regarding *arrests* even when they pertained to the character trait vouched for on direct examination. By so doing, the court has cast a cloud of doubt on the right to cross-examine a character witness concerning any and all prior relevant offenses *absent a conviction* therefor.

The eminent Chief Justice Henry X. O'Brien, writing for a unanimous court, in *Scott,* quoted with approval the following portion of the dissenting opinion of Mr. Justice Rutledge in *Michelson v. United*

54

job and used alcohol and marijuana was unfounded since, while the Commonwealth may discredit evidence of good character, it may only do so by evidence of general reputation and not by particular acts of misconduct, *Commonwealth v. Butts*, 204 Pa.Super. 302, 204 A.2d 481 (1964), and the cross-examination of character witnesses by the Commonwealth is limited to knowledge of the reputation of the defendant as to the traits vouched for on direct examination. *Commonwealth v. Thomas, supra; Commonwealth v. Colandro, supra; Commonwealth v. Hurt, supra; Commonwealth v. Wiswesser, supra.* Third, a balancing of the benefits of character testimony against the unfavorable cross-examination, even if it were admitted, reveals that, under all of the circumstances of this case, the benefit far outweighs any harm.

In a case where virtually the only issue is the credibility of the witness for the Commonwealth versus that of the defendant, failure to explore all available alternatives to assure that the jury heard the testimony of a known witness who might be capable of casting doubt upon the truthfulness of the Commonwealth witness is ineffective assistance of counsel. *Commonwealth v. Abney*, 465 Pa. 304, 309, 350 A.2d 407, 410 (1976); *Commonwealth v. Twiggs*, 460 Pa. 105, 110, 331 A.2d 440, 443 (1975). We conclude that the decision of counsel to forego the presentation of character testimony at the trial: (1) was ill advised; (2) was a decision made without adequately informing his client of the value of such evidence; and (3) was principally defective by a failure to adequately prepare for the presentation of such testimony. We, therefore, hold that the

*States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), wherein he wrote:

My own preference and, I think, the only fair rule would be to foreclose the entire line of inquiry concerning the specific incidents in the defendant's past, both on cross-examination and on new evidence in rebuttal. This would leave room for proper rebuttal without turning the defendant's trial for a specific defense into one for all his previous misconduct, criminal or other, and would put the prosecution on the same plane with the defendant in relation to the use of character evidence. *Id.* at 496, 69 S.Ct. at 228 (Dissenting Opinion).

failure of counsel to present such testimony did not have a reasonable basis and, therefore, appellant was denied the effective assistance of trial counsel.

Judgment of sentence reversed. Case remanded for new trial.

BROSKY and BECK, JJ., filed concurring opinions.

BROSKY, Judge, concurring:

I agree with the majority's determination of trial counsel's ineffectiveness, but write to address the manner in which the claim was preserved for our review. I also join in the Concurring Opinion by Judge Beck.

As noted in footnote one of the majority opinion, trial counsel was replaced at the post-trial motions stage of the proceedings below and new counsel filed post-trial motions in arrest of judgment and for a new trial. Included in the motion for a new trial was a claim that trial counsel was incompetent. It was, of course, necessary for new counsel to raise this claim in the post-trial motions since a claim of ineffectiveness of prior counsel is not preserved unless it is raised at the earliest stage, in the proceedings at which counsel whose effectiveness is being challenged no longer represents the defendant. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977).

However, new counsel subsequently filed a motion in which he requested that the argument on post-trial motions be converted to a post-conviction hearing.[1] The court below then consolidated the argument on the post-trial motions with what it terms a PCHA hearing in the context of which the claim of ineffectiveness of counsel was heard.

1. Counsel apparently believed either that a claim of ineffectiveness of counsel must be raised in a Post Conviction Hearing Act (PCHA) proceeding, see 42 Pa.C.S.A. § 9541 et seq., or that an evidentiary hearing on the claim could not be part of the post-trial motions proceedings, but had to take place in the context of a post-conviction hearing. Neither of these propositions is true.

A claim of ineffectiveness of counsel can certainly be raised in post-trial motions and there is no reason why the post-trial court cannot conduct an evidentiary hearing, if necessary, on such a claim. Furthermore, a PCHA proceeding is not proper before judgment of

56

After the hearing, the lower court, on September 16, 1980, entered an order in which it denied the motions for a new trial and in arrest of judgment and further denied what it termed appellant's PCHA application. On November 3, 1980, appellant was sentenced to a term of imprisonment of not less than three nor more than six years.

On this appeal from the judgment of sentence, we then, theoretically, could refuse to consider the ineffectiveness claim on the basis that it was the subject of a prior final order (that part of the court's order of September 16 denying the PCHA application) from which appellant has not appealed. See, *Petition of Baily*, 365 Pa. 613, 76 A.2d 645 (1980).

However, I believe the better and more just course is, as we have here, to consider the substance of the proceedings below rather than their form. I find that, in substance, what occurred was no more than the raising of the ineffectiveness claim in a post-trial motion for a new trial; an evidentiary hearing pursuant to that claim; and a denial of the claim by the court below.

I think that the key point is that the claim was raised in appellant's post-trial motions. The fact that it was subsequently termed a PCHA claim due to an erroneous impression on the part of new counsel and the lower court that such was necessary because the claim was one of ineffectiveness of counsel should not serve to invalidate an otherwise proper procedure. Furthermore, the court below did treat the claim on its merits despite the fact that an actual PCHA claim should have been dismissed under § 9543(2) since appellant had not yet been sentenced. Therefore, I conclude that when the lower court stated that it was refusing appellant's PCHA application, it was, in effect, simply specifically denying one of appellant's grounds for a new trial. Thus, on appeal from the judgment of sentence it is proper to consider the ineffective assistance of counsel claim.

sentence. One is not eligible for relief under the Act unless he is, *inter alia,* "incarcerated ... under a sentence of ... imprisonment ..." 42 Pa.C.S.A. § 9543(2); see 42 Pa.C.S.A. § 9542.

BECK, Judge, concurring:

I join in the majority opinion of Judge McEwen and in the concurring opinion of Judge Brosky. However, I write separately to underscore the basis for our holding that appellant received ineffective assistance of counsel because his trial attorney did not attempt to identify and interview potential character witnesses.

As the majority has observed,

> when confronted with a claim of ineffectiveness of counsel, this Court utilizes a two-step analysis. The Court must first determine whether the issue underlying the charge of ineffectiveness is of arguable merit .... If the underlying issue is found to be of arguable merit, our inquiry shifts to a determination of whether the course chosen by counsel had some reasonable basis aimed at promoting his client's interests.

*Commonwealth v. Jennings,* 285 Pa.Super.Ct. 295, 298–99, 427 A.2d 231, 232 (1981).

The majority opinion clearly establishes that character evidence would have figured prominently in the trial of this case since "virtually the only issue [was] the credibility of the witness for the Commonwealth [*i.e.,* the complainant] versus that of the [appellant]." (At 1080.) Consequently, there is arguable merit in appellant's claim that his attorney should have interviewed possible witnesses as to appellant's character.

We now consider whether appellant's counsel had a reasonable basis for not interviewing any potential character witnesses. In *Commonwealth v. Jones,* 496 Pa. 448, 437 A.2d 958 (1981), the Pennsylvania Supreme Court held that defense counsel was ineffective for not interviewing or attempting to interview an eyewitness to the charged crime (1) where there was arguable merit in interviewing the eyewitness to ascertain if the witness's testimony would prove useful to the defense at trial and (2) where, without first interviewing the witness, counsel could not have made an informed decision regarding the likely helpful or harmful

58

effect of the witness's testimony upon the defendant's case. To support its conclusion that counsel lacked a reasonable basis for not interviewing the eyewitness before opting not to call the witness at trial, the Supreme Court quoted extensively from its reasoning in *Commonwealth v. Mabie*, 467 Pa. 464, 475, 359 A.2d 369, 374–75 (1976):

> *[T]he question here is the decision not to interview [the witnesses], not the decision to refrain from calling them at trial....* (Emphasis added.) [T]he value of the interview is to inform counsel of the facts of the case so that he may formulate strategy.... *[N]o ... claim of strategy can be attached to a decision not to interview or attempt to interview [witnesses] prior to trial.* (Emphasis in original.) Therefore, no reasonable basis designed to effectuate [the defendant's] interest can be attributed to counsel's failure to question ... witnesses or at least make a reasonable attempt to do so.

*Jones*, 496 Pa. at 451, 437 A.2d at 959–60.

Accordingly, in the present case appellant's counsel likewise lacked a reasonable basis for not interviewing or trying to interview potential character witnesses in order to evaluate the possible utility of their testimony.