477 A.2d 1382

**COMMONWEALTH of Pennsylvania**

v.

**Richard Lee HURLBERT, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 27, 1983.

Filed May 25, 1984.

Petition for Allowance of Appeal Denied Oct. 17, 1984.

William F. Cercone, Jr., Pittsburgh, for appellant.

Timothy J. Lucas, Assistant District Attorney, Erie, for Commonwealth, appellee.

Before BROSKY, McEWEN and BECK, JJ.

BROSKY, Judge:

Appellant Richard Hurlbert appeals from the judgment of sentence imposed upon him following his conviction by a jury of rape and criminal conspiracy.

On appeal Mr. Hurlbert argues: (1) that the trial court erred in refusing to give him access to records made at a rape crisis center and a hospital; (2) that he should have been granted a new trial because the Commonwealth failed to disclose an exculpatory statement; (3) that the trial court

should have directed a verdict on the conspiracy charge; and (4) that his trial counsel rendered him ineffective assistance because he failed to introduce at trial or sentencing evidence of the psychological effects of using marijuana.

The facts of this case were summarized by us in the opinion we issued in appellant's co-defendant's appeal. In *Commonwealth v. Hicks*, —— Pa.Super. ——, —— A.2d —— (filed —— 1984) we wrote:

[O]n the evening of February 18, 1981 the complainant was a patron at a lounge known as the Indian Head Inn in Waterford. She arrived at approximately 10:00 p.m. Miss Patterson knew a Martin Rice, whom she saw at the lounge and who introduced her to two of his friends, appellant and appellant's co-defendant, Richard Hurlbert. Mr. Rice invited Miss Patterson to join Hurlbert, appellant and him in Hurlbert's van, where the group smoked a marijuana cigarette. The group returned to the van two more times that evening, accompanied the third time by two of Miss Patterson's friends. One of those other women left the van after a few minutes, the other, Chris Johnson stayed for approximately ten minutes. Miss Johnson had accompanied the group comprised of Hurlbert, Rice, appellant and Miss Patterson on the second and third trips to the van on all of which occasions marijuana was smoked.

Miss Johnson testified that when she left the van on her last trip it was raining and she ran back to the lounge, but turned as she was running and saw appellant put his hands on Miss Patterson's shoulders and suggest that she stay.

Miss Patterson did remain in the van smoking marijuana and in fact shared a marijuana cigarette with appellant by a means known as "shotgunning". That is, one of the pair put the lit end of the cigarette in his or her mouth and the other inhaled from the other end. The couple also kissed and Miss Patterson indicated that she did not resist a kiss from Mr. Hicks.

Miss Patterson believed that Mr. Hurlbert, who was seated in the driver's seat of the van, would drop her off at the door to the lounge. Instead, he drove away explaining that he was going to get cigarettes. The van passed the store where Miss Patterson had expected the cigarette purchase to be made apparently because it was closed. After a time the van was travelling on a road unfamiliar to Miss Patterson and she suggested that she should be taken back to the lounge where she was to meet friends. Instead Mr. Hurlbert continued to drive in territory unfamiliar to Miss Patterson. He eventually stopped the van. Mr. Hurlbert, then Mr. Rice, and then Mr. Hicks exited the van. Mr. Hurlbert returned and entered the rear of the van where Miss Patterson had been sitting with Mr. Hicks. Miss Patterson then testified:

And then he [Mr. Hurlbert] had his hands on my shoulders and he was pushing me back down, and that's when I kept asking him not to, and he said that if I didn't, he would call the other two.

Miss Patterson then related that Mr. Hurlbert removed her slacks and underwear. When asked whether she resisted Mr. Hurlbert, Miss Patterson replied: "Enough to get beat up or something?" "Whenever he was pushing me back, I kept pushing forward and asking him not to, and then he said he was going to call the other guys and pushed me back down, and he took my clothes, and I told him that I had a bad stomach."

After describing Mr. Hurlbert's sexual assault upon her, Miss Patterson described her encounter with Mr. Hicks....

She said that while she and Mr. Hurlbert were alone in the van Mr. Rice and appellant tried to enter but were told by Mr. Hurlbert to get out. Mr. Rice and appellant then stood outside looking in the van windows. Eventually Mr. Hicks entered the van, removed his pants and had intercourse with Miss Patterson, who had been lying down since Mr. Hurlbert pushed her.

While she and Mr. Hicks were having intercourse, Mr. Hurlbert lay beside them. When Mr. Hicks got up Mr. Hurlbert again got on top of Miss Patterson and had intercourse with her.

When asked if Mr. Hicks, who remained in the van, said anything to her, Miss Patterson replied: "They asked me if I liked it." She was then asked if she said anything to Hicks and Hurlbert and she said: "I said it wasn't right."

Ultimately Mr. Hicks, Mr. Hurlbert and Miss Patterson got out of the van. Miss Patterson spoke to Mr. Rice and asked him why he "let them do that" to her. The four entered the van and with Mr. Hurlbert driving, took Miss Patterson to the doctor's office where she was employed. It was after midnight and the office was locked and dark. Miss Patterson let herself in and called Mr. and Mrs. Sterling, friends of hers who lived nearby. Miss Patterson talked on the telephone to Mrs. Sterling while waiting for Mr. Sterling to come for her. She did not turn on the lights, but sat behind her desk in the dark. She and Mr. Sterling arranged that he would flash the light of his car as a signal that it was he in the parking lot. Mr. Sterling took Miss Patterson to his home. He testified that her clothes were in disarray, her pants were half-snapped, her make-up was streaked, she was crying and as Mr. Sterling put it, "carrying on."

*Id.* at —, — A.2d at — (footnote deleted).

■ We can readily dispose of Mr. Hurlbert's contention that he is entitled to a new trial because the Commonwealth failed to disclose exculpatory evidence. The evidence to which appellant refers is a statement which Martin Rice supposedly made to the police and District Attorney. In an affidavit by Mr. Rice he states that he told the police and District Attorney that the sexual relations between Mr. Hurlbert and the complainant were consensual.

The trial court, however, conducted an evidentiary hearing to determine whether the Commonwealth had failed to disclose such a statement and it concluded that it did not believe Mr. Rice's claim that the statement had been made

to the police. The question was clearly one of credibility that was left to the fact finder. *Commonwealth v. Henry,* 323 Pa.Super. 260, 470 A.2d 581 (1983).

■ Nor do we find merit in appellant's contention that a verdict in his favor should have been directed on the conspiracy charge. ·

Conspiracy is defined at 18 Pa.C.S. § 903(a):

(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

Appellant contends that there was no evidence of an agreement between Mr. Hicks, Mr. Rice and appellant to rape Miss Patterson. He contends that in this regard the present case is much like *Commonwealth v. Henderson,* 249 Pa.Super. 472, 378 A.2d 393 (1977). In that case, however, there was no evidence that appellant had engaged in sexual relations with the complainant. The court held that the defendant was entitled to a charge that mere presence and knowledge of the crime were not alone enough to convict him of conspiracy.

As our earlier recitation of the facts indicates, there was in this case evidence that appellant was not merely present at the scene of the rape and knowledgeable about it, but also participated in it.

■ An agreement to commit a criminal act can be proven circumstantially. *Commonwealth v. Davenport,* 307 Pa. Super. 102, 452 A.2d 1058 (1982). In *Commonwealth v. Bossick,* 305 Pa.Super. 196, 201, 451 A.2d 489, 491 (1982) we explained:

The evidence needed to prove a conspiracy must show more than a mere association, but a "conspiracy may be inferentially established by showing the relation, conduct or circumstances of the parties, and the overt acts on the part of the co-conspirators have uniformly been held competent to prove that a corrupt consideration has in fact been formed." (citation omitted).

The evidence outlined earlier in this opinion was sufficient to support a finding of conspiracy.

We come next to appellant's claim that he was denied the effective assistance of counsel at trial because his trial counsel did not introduce expert evidence of the effects of marijuana. He believes that counsel should have used such evidence to impeach Miss Patterson's credibility.

■ The standard to be used in assessing counsel's stewardship is well established. We must determine whether:

... the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

*Commonwealth v. McCaskill*, 321 Pa.Super. 266, 468 A.2d 472 (1983) citing *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604–05, 235 A.2d 349, 352–53 (1967) (emphasis in original).

In his brief appellant cites as an example of the type of evidence that should have been used an article in which the author states that among the effects of marijuana can be a heightening of sexual desire and increased enjoyment of sex. Significantly, the quoted portion of the article begins with the statement, "The feelings a person experiences under the influence of marijuana depend in large measure upon the setting in which the drug is taken, the potency of the drug, and the user's state of mind...."

■ We note initially that even the evidence which appellant suggests should have been used itself indicates that any statement about the effect of marijuana is speculative, since it can vary from person to person. Appellant cites no other example of the type of evidence which should have been used. It is only when the claim which was foregone was arguable merit that we must make an inquiry into the basis from the post-trial counsel's decision not to pursue the matter. *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977).

■ Appellant has not shown us evidence the introduction of which would have offered a substantially greater potential for success than he achieved through the trial strategy he employed.[1] We conclude that the foregone opportunity to introduce evidence like that quoted in appellant's brief, did not deprive appellant of an issue of arguable merit.

In fact, we believe that use of such evidence (assuming *arguendo* its admissibility) might have actually hurt appellant's case. While the cited material *might* suggest that Miss Patterson may have had heightened sexual interest, it equally well may have suggested the same of Mr. Hurlbert with whom she smoked marijuana and who denied having had sexual relations with her.

We note also that we find no support for appellant's position in *Commonwealth v. Potts,* 486 Pa. 509, 406 A.2d 1007 (1979) which dealt with evidence of a defendant's state of mind.

■ We come finally to appellant's claim that his counsel should have been given access to hospital records pertaining to Miss Patterson and to the counselors at the rape crisis center she visited.

Appellant filed with the lower court a motion for discovery seeking, *inter alia,* discovery of the admission form and appellant's history when at St. Vincent's Hospital,

---

1. See also *Commonwealth v. Johnson,* 291 Pa.Super. 566, 436 A.2d 645 (1981) (Commonwealth may cross-examine witnesses as to drug use without introducing scientific evidence of its effects.)

following the incident, if those reports were in the possession control or known to the District Attorney's office. The lower court denied the discovery motion but did not indicate in its opinion the reason for the denial. The order denying the discovery motion did suggest that it was being denied because the items requested had either been given to appellant's counsel or they were not in the District Attorney's possession.

Nor did the trial court indicate the reason for its denial of appellant's request, made by way of a motion for issuance of subpoena *duces tecum*, for the records of the rape crisis center.

We find that we are unable to review the propriety of the lower court's rulings as to the hospital and crisis center files on the basis of the record before us.

As to the admission form and history taken at St. Vincent's, it may be as is suggested in the court's order of April 29, 1981, that those documents were not in the possession of the District Attorney. We note, however, that the hospital had been directed by order of February 24, 1981 to provide the District Attorney with all of Miss Patterson's records regarding her treatment for rape. In any event, we are unaware of the trial court's reason for denying the records to defense counsel.[2]

Similarly, we cannot review the trial court's decision as to the rape crisis center records.

In *In the Matter of Pittsburgh Action Against Rape*, 494 Pa. 15, 428 A.2d 126 (1981) our Supreme Court refused to grant an absolute privilege to rape crisis center files. In-

---

**2.** Prior to January 1, 1978, a defendant who wanted the trial court to order discovery of the hospital records of the victim of rape, had to show exceptional circumstances or compelling reasons for such disclosure. See *Commonwealth ex rel. Specter v. Shiomos*, 457 Pa. 104, 320 A.2d 134 (1974) in which our Supreme Court discussed former Pa.R.Crim.P. 310 which so limited a defendant's discovery rights.

The rules of Criminal Procedure relating to discovery were amended in June, 1977 and Pa.R.Crim.P. 305 was adopted, effective January 1, 1978. That rule expands a defendant's discovery rights.

Pa.R.Crim.P. 305B(1)(a) requires the Commonwealth to disclose any evidence favorable to the defendant.

stead, the court said that when the file is sought to determine the existence of prior inconsistent statements by the complainant, the trial court should make whatever inquiry is necessary to determine whether matters contained in the file are indeed "statements". The review is to be conducted *in camera.*

It may well be that such a review was conducted in this case, but the record does not disclose whether it occurred. We cannot, therefore, review the trial court's decision. See and compare *Commonwealth v. Nelson,* 311 Pa.Super. 1, 456 A.2d 1383 (1983) in which the defendant sought all documents in the rape crisis center file. Although there was no record evidence of what occurred at the *in camera* hearing, we were able to address appellant's claim that he was entitled to the documents because the issue had been briefed by both parties and discussed in the trial court opinion.

Because we are unable to determine whether the rape crisis center file contained statements by Miss Patterson that should have been made available to appellant, we must remand for further proceedings.

Our mandate on remand is essentially the same as that outlined in this court's opinion in *Commonwealth v. Ritchie,* 324 Pa.Super. 557, 472 A.2d 220 (1984) in which we wrote:

> We direct the trial court to review the rape crisis center records *in camera* to determine whether they contain any statements made by Miss Patterson regarding the incident. If the court determines that there were no such statements, then it should reinstate the judgment of sentence. If the records do contain such statements they should be made available to appellant's counsel, who should then be given an opportunity to argue to the court that the statements could have been used to discredit Miss Patterson's testimony. *Commonwealth v. Slaughter,* 482 Pa. 538, 394 A.2d 453 (1978). The Commonwealth should be permitted an opportunity to argue that the court's failure to provide appellant's counsel with the

statements prior to trial was harmless error. If the court is not convinced that the statements were irrelevant or that any error was harmless, then it should grant appellant a new trial. *Commonwealth v. Hamm*, 474 Pa. 487, 378 A.2d 1219 (1977). Following the court's ruling, either party may file an appropriate appeal.

In order to preserve the parties' rights to effective counsel and allow appellate review, the entire record reviewed by the court at its *in camera* proceeding should be preserved for appeal. This record may be sealed in order to protect its confidentiality. In addition, counsel should be permitted access to this record in order to argue the relevance of the material in accordance with this decision. Counsel, of course, are permitted access to this record for this purpose only and are otherwise bound by the confidential nature of the material in the record.

Additionally, the trial court is to determine whether appellant was entitled to the medical records he sought. Whether appellant is entitled to a new trial is to be determined in the manner outlined above.

Judgment of sentence is vacated and case remanded for proceedings consistent with this opinion. We do not retain jurisdiction.