J-S11003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEO A. GARDNER | : | |
| | : | |
| Appellant | : | No. 2259 EDA 2022 |

Appeal from the PCRA Order Entered August 4, 2022
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0001172-2017

BEFORE:  OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY OLSON, J.:                          **FILED JUNE 07, 2023**

Appellant, Leo A. Gardner, appeals from the order entered on August 4, 2022, dismissing his first petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

This Court previously set forth the facts of this case as follows:

The Commonwealth charged Appellant with, *inter alia*, [attempted murder, aggravated assault, terroristic threats, and simple assault[1]] following his violent attack of Brittany Seitz.  Appellant's two-day jury trial commenced on June 19, 2018.

At trial, the Commonwealth presented the testimony of a number of witnesses including eyewitnesses Hericson Torres, Brandon Caron, and State Troopers Anthony Paciotti and Ian MacMillan. Appellant presented the testimony of an investigator, Joseph Alercia, and also testified on his own behalf, asserting that he [acted] in self-defense.

---

[1] 18 Pa.C.S.A. §§ 901(a)—2501; 2702(a)(1); 2706(a)(1); and 2701(a)(3), respectively.

We glean[ed] the following relevant facts from our review of the record, including the trial court's Pa.R.A.P. 1925(a) [o]pinion. Appellant and Brittany Seitz spent April 26, 2017, together ingesting drugs, including methamphetamine, and driving around Monroe County. Late that evening, or in the early hours of April 27, 2017, Ms. Seitz pulled her car over to the side of the road, whereupon she and Appellant engaged in a physical altercation.

Hericson Torres's testimony revealed that, in the early morning hours of April 27, 2017, his wife woke him after she heard a female screaming outside their home. Mr. Torres testified that he walked outside and heard a female voice screaming for help. At around 3:30 [a.m.], he went to investigate the voice, bringing with him a flashlight, a tee-ball bat, and a knife.

Brandon Caron testified that he also left his home in the early hours of that morning to investigate after hearing a female voice yell, "Help. He's killing me." He testified that when he arrived he found Appellant on top of Ms. Seitz, dragging her into the woods, biting her, with his fingers in her eyes. Ms. Seitz was lifeless, and Mr. Caron testified that he believed she was dead. Mr. Caron further testified that he yelled at Appellant to stop, and Appellant responded by stating something akin to "get out of here. I stabbed her in the throat ... I slit her throat ... get out of here or I'll kill you too."

Mr. Torres testified that, when he arrived on the scene, Mr. Caron reported that Appellant was eating Ms. Seitz, and that, due to the darkness, Mr. Torres thought Appellant may actually have been a bear. Mr. Torres also testified that he thought Ms. Seitz was dead.

The testimony indicated that Mr. Torres and Mr. Caron attempted to stop Appellant by hitting, pushing, and kicking him. Their efforts were, however, unsuccessful. Instead, Appellant warned them to mind their own business and threatened to kill them.

At approximately 4:00 [a.m.], Troopers Anthony Paciotti and Ian McMillan arrived at the scene. They observed Appellant continue to attack Ms. Seitz while she lay lifeless on the ground. Trooper Paciotti saw Appellant on his hands and knees on top of Ms. Seitz, with his face in contact with Ms. Seitz's face. Appellant refused Trooper Paciotti's command to get off Ms. Seitz. Trooper Paciotti proceeded to kick Appellant off Ms. Seitz. Trooper Paciotti observed that Appellant was [incoherent and] naked except for his underwear[.]

- 2 -

Once they removed Ms. Seitz from the scene, the troopers observed that Appellant had partially amputated Ms. Seitz's nose, and she had sustained multiple bruises and bites. Both of her eyes were swollen shut. They transported her to the hospital. Troopers also took Appellant to the hospital where doctors treated him for a collapsed lung, head trauma, broken bones, and multiple stab wounds. Lab tests revealed that Appellant had toxic levels of methamphetamine in his blood.

In his case-in-chief, Appellant claimed that he had been acting in self-defense.

***Commonwealth v. Gardner***, 2019 WL 3801485, at *1–2 (Pa. Super. 2019) (unpublished memorandum) (original footnotes and record citations omitted).

On June 21, 2018, the jury convicted Appellant of the aforementioned crimes. On August 16, 2018, the trial court sentenced Appellant to an aggregate term of 12 ½ to 25 years of imprisonment. We affirmed Appellant's conviction in an unpublished memorandum on August 13, 2019. ***See Commonwealth v. Gardner***, 2019 WL 3801485 (Pa. Super. 2019) (unpublished memorandum). By *per curiam* order entered on June 1, 2020, the Pennsylvania Supreme Court denied further review. ***See Commonwealth v. Gardner***, 235 A.3d 271 (Pa. 2020) (*per curiam*).

On October 19, 2020, Appellant filed a timely *pro se* PCRA petition. The PCRA court appointed counsel who filed an amended PCRA petition on April 19, 2021. On April 8, 2022, the PCRA court held a hearing regarding allegations that trial counsel was ineffective for: (1) not calling several witnesses to testify at trial, including the victim Brittany Seitz, as well as Ray Ianuale and Dennis Blanchette, (2) improperly supervising a private investigator hired to procure the missing witnesses and failing to call the

investigator as a trial witness, (3) failing to secure a medical expert, (4) inappropriately calling several character witnesses who subsequently divulged Appellant's prior criminal history on cross-examination, and (5) failing to inform Appellant of a potential conflict of interest. Only Appellant and trial counsel testified at the PCRA hearing. By order and opinion entered on August 4, 2022, the PCRA court denied relief. This timely appeal resulted.[2]

On appeal, Appellant claims the PCRA court erred or abused its discretion in dismissing his PCRA petition because trial counsel was ineffective for:

1. Failing to subpoena and call several vital witnesses to testify at trial, including, Brittany Seitz, Raymond Ianuale, and Dennis Blanchette[;]

2. Failure to supervise investigator Joseph Chillari and to subpoena him to testify at trial[;]

3. Failing to consult with a medical expert regarding the injuries sustained by [] Appellant during the incident in question[;]

4. Calling multiple character witnesses at trial who were cross-examined about Appellant's criminal history[;]

5. Failing to inform Appellant of a potential conflict regarding her representation of the victim, Brittany Seitz on an unrelated matter[;]

Appellant's Brief at 4-5.

_____

[2] Counsel for Appellant filed a notice of appeal on September 2, 2022. On September 7, 2022, the PCRA court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Counsel for Appellant complied timely on September 28, 2022. On September 28, 2022, the PCRA court issued a statement in lieu of an opinion pursuant to Pa.R.A.P. 1925(a), relying upon its earlier opinion filed on August 4, 2022, as rationale for its decision to deny relief.

All of Appellant's claims allege that trial counsel was ineffective. As such, we employ the following standards of appellate review:

> Our standard of review from the grant or denial of post-conviction relief is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. To prevail on ineffective assistance of counsel claims, the PCRA petitioner must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered prejudice because of counsel's action or inaction. The law presumes counsel was effective and PCRA petitioners bear the burden of pleading and proving each of the three factors by a preponderance of the evidence. A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs.

*Commonwealth v. Krock*, 282 A.3d 1132, 1137 (Pa. Super. 2022) (internal citations, quotations, ellipses, and brackets omitted). An appellate court "view[s] the evidence of record in a light most favorable to the Commonwealth, as the prevailing party below[, and is] bound by the PCRA court's credibility determinations, unless those determinations are not supported by the record[.]" *Commonwealth v. Flor*, 259 A.3d 891, 902 (Pa. 2021) (citation omitted). We review the PCRA court's legal conclusions *de novo*. *Id.* (citation omitted).

In his first issue presented, Appellant contends that trial counsel was ineffective for failing to call Brittany Seitz, Raymond Ianuale, and Dennis Blanchette to testify at trial. Appellant's Brief at 10-15. Regarding Brittany Seitz, Appellant asserts that "Appellant and [Seitz] were the only two (2) people present for the entire altercation in question, and the fact that the

victim was not called to testify was so prejudicial to [Appellant] that he was not given a fair trial." *Id.* at 12. Next, Appellant claims that trial counsel was ineffective for failing to call Raymond Ianuale to testify at trial. *Id.* at 13-14. Appellant claims that Ianuale, a man who knew the victim, appeared at the crime scene when Brandon Caron and Hericson Torres interceded. *Id.* at 13. According to Appellant, Ianuale would have testified that he saw either Caron or Torres wielding a knife. *Id.* Further, Appellant avers that, while incarcerated, Dennis Blanchette, another inmate, "approached him, and stated that he knew the alleged victim, Ms. Seitz, and that Ms. Seitz is the leader of a crew that … would rob people, stab them, and then leave them for dead." *Id.* at 14 (record citations omitted). Appellant claims trial counsel was ineffective for failing to call Blanchette at trial. *Id.*

In his second (and related) issue, Appellant claims trial counsel was ineffective for failing to "oversee" defense investigator, Joseph Chillari, and to call him as a witness at trial "as to all of the interviews he conducted, and everything that he gathered throughout his investigation." *Id.* at 17. Taken together, Appellant asserts in his two opening claims that he was prejudiced by counsel's failure at trial to present testimony from Seitz, Ianuale, Blanchette, and Chillari. *Id.* at 12-17.

We have previously determined:

> To prevail on a claim that counsel was ineffective for failing to call a witness, Appellant must demonstrate that: (1) the witness existed, (2) the witness was available to testify on his behalf, (3) counsel knew or should have known about the witness, (4) the

witness was willing to testify on his behalf, and (5) the absence of the testimony prejudiced him.

Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness's testimony would have been beneficial or helpful in establishing the asserted defense.

*Commonwealth v. Prater*, 256 A.3d 1274, 1284 (Pa. Super. 2021), *appeal denied*, 268 A.3d 386 (Pa. 2021) (internal citations and quotations omitted).

The PCRA court determined that Appellant failed to meet his burden of showing prejudice as a result of trial counsel's failure to call the witnesses listed above. *See* PCRA Court Opinion, 8/4/2022, at 10. As the PCRA court noted initially, Appellant did not call any witnesses at the PCRA hearing and, instead, testified on his own behalf as to "what he believed they would have said if called to testify." *Id.* The Commonwealth objected to Appellant's testimony as hearsay, the PCRA court agreed and, therefore, did not consider the testimony. *Id.* Instead, the court concluded that Appellant did not produce sufficient evidence to support his ineffectiveness claims which rested on counsel's failure to call certain witnesses. *Id.* Additionally, the PCRA court recalled that "two people completely unknown to [Appellant], testified convincingly [at trial] about what they saw at the scene including that [the victim] appeared dead and that despite numerous physical efforts, they were unable to stop [Appellant] from continuing to assault her." *Id.* at 18. Moreover, "[t]he officers who [later] arrived at the scene [confirmed] that far from self-defense, [Appellant] had to be restrained from continuing to attack the lifeless victim." *Id.*

We agree with the PCRA court that trial counsel was not ineffective in failing to call the witnesses Appellant lists on appeal. Appellant has not offered evidence which shows that the uncalled witnesses would have aided his efforts to prove self-defense at trial. Moreover, with regard to defense investigator, Chillari, the PCRA court concluded that trial counsel had a reasonable basis to forgo calling him at trial because "he had no additional information which would have been admissible over hearsay objections" and that Appellant further admitted at the PCRA hearing that "Mr. Chillari did everything [Appellant] asked him to do and that he was satisfied" with the investigation. *Id.* at 20. Finally, we note that "Appellant presented the testimony of an[other] investigator, Joseph Alercia" at trial. *Gardner*, 2019 WL 3801485, at *1. For the foregoing reasons, Appellant fails to show that he was prejudiced by trial counsel's failure to call the aforementioned witnesses at trial. As such, Appellant's first two appellate issues lack merit.

Next, Appellant asserts that trial counsel was ineffective in failing to consult a medical expert about the "severe and life-threatening injuries" he sustained which were "indicative of self-defense." Appellant's Brief at 18-22. Appellant posits that such evidence was necessary to prove that he was not the aggressor, that it was reasonable for him to believe that his life was threatened by deadly force, and, ultimately, that his claims of self-defense or imperfect self-defense possessed merit. *Id.* at 18.

Our Supreme Court has determined:

> Trial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony. Additionally, trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony that was presented by the prosecution.

*Commonwealth v. Williams*, 141 A.3d 440, 464 (Pa. 2016) (citation omitted).

Here, as the PCRA court recounted:

> This case did not hinge upon which party sustained worse injuries. [Trial counsel] testified that it was her strategy to bring in evidence of [Appellant's] injuries through eyewitnesses and [Appellant] himself. [The trial court] believe[d] it was sufficient for the jury to consider. As previously opined[,] even with evidence of [Appellant's] numerous injuries, he was unable to support a claim of self-defense due to his repeated failure to retreat once it was safe to do so. Even with a medical expert to testify as to [Appellant's] own injuries it is unlikely the end result of the trial would have been any different.

PCRA Court Opinion, 8/4/2022, at 21 (record citation omitted).

We agree with the PCRA court's analysis. As made clear in our decision on direct appeal, set forth above, two eyewitnesses testified that when they came to the crime scene, Appellant was attacking the victim, biting and/or eating her face and pushing his fingers into her eyes, while she appeared lifeless on the ground. Approximately one-half hour later, when police arrived, Appellant was still attacking the victim as she lay limp. A claim of self-defense or imperfect self-defense requires proof that "the defendant was not the aggressor and did not violate a duty to retreat safely." *Commonwealth v. Busanet*, 54 A.3d 35, 56 (Pa. 2012) (citations omitted). Evidence from a

medical expert showing that Appellant also sustained serious injuries during the assault would not refute the fact that Appellant violated his duty to retreat safely which, in turn, defeated his self-defense claim. Moreover, trial counsel elicited largely identical medical testimony from Appellant regarding the extent of his injuries. Therefore, we agree with the PCRA court that trial counsel was not ineffective for failing to call a medical expert at trial.

In his fourth issue presented, Appellant claims that trial counsel was ineffective for calling two of the eight character witnesses who testified on Appellant's behalf at trial. Appellant's Brief at 22-23. Appellant argues that six of the testifying character witnesses did not know about his past, criminal history which included convictions for receiving stolen property, resisting arrest, and recklessly endangering another person. *Id.* at 22. Two of the character witnesses, however, were aware of Appellant's past criminal history and their favorable character testimony "open[ed] the door to Appellant's past convictions" upon cross-examination by the Commonwealth. *Id.*

This Court has previously stated:

It is clearly established that evidence of good character is to be regarded as evidence of substantive fact just as any other evidence tending to establish innocence and may be considered by the jury in connection with all of the evidence presented in the case on the general issue of guilt or innocence. Evidence of good character is substantive and positive evidence, not a mere make weight to be considered in a doubtful case, and, is an independent factor which may of itself engender reasonable doubt or produce a conclusion of innocence. Evidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation for the particular trait or traits of character involved in the commission of the crime charged. The

- 10 -

cross-examination of such witnesses by the Commonwealth must be limited to the same traits. Such evidence must relate to a period at or about the time the offense was committed and must be established by testimony of witnesses as to the community opinion of the individual in question, not through specific acts or mere rumor.

\*\*\*

This [C]ourt has made clear that in a case where intent and credibility are decisive factors leading to either acquittal or conviction, the accused's reputation is of paramount importance. Indeed, evidence of good character may, in spite of all evidence to the contrary, raise a reasonable doubt in the minds of the jury.

*Commonwealth v. Luther*, 463 A.2d 1073, 1077–1078 (Pa. Super. 1983)

(internal citations, quotations, original brackets omitted).

On this issue, the PCRA court opined:

[Appellant] was in a very difficult position taking this matter to trial. Multiple witnesses testified that he [] savagely attacked Ms. Seitz. His only avenue to counter the testimony was to testify himself. However, [Appellant's] testimony had many problems; he admitted to having used drugs that day, his story involved multiple holes and inconsistencies, and he could not recall large portions of the event. [Appellant's] credibility was a significant obstacle for the defense. Anything that could bolster his credibility would have been an asset. [The PCRA court found trial counsel] credible in her testimony that she went over the risks of introducing character witness testimony and she and [Appellant] agreed it was the right strategy to take at the time. [The PCRA court did] not find [Appellant] credible in his recollections concerning the character witnesses.

PCRA Court Opinion, 8/4/2022, at 23 (record citation omitted).

Initially, we note that the PCRA court's credibility determinations are supported by the record and, therefore, we are bound by them. In this case, Appellant's reputation was of paramount importance and his intent and credibility were decisive factors in this case. The PCRA court determined that

trial counsel pursued a reasonable strategy in presenting evidence of Appellant's good character.  Moreover, while "[s]ix of the eight [character] witnesses were unaware of [Appellant's criminal] background, [] **all** of them agreed that [his prior record] did not affect their opinion of" Appellant's character for peacefulness.  *Id.* at 22 (emphasis added).  Appellant has not shown that trial counsel lacked reasonable grounds for her action.  Accordingly, we deem Appellant's fourth issue meritless.

Finally, Appellant argues that trial counsel had a conflict of interest because she represented the victim in a prior, unrelated matter.  Appellant's Brief at 24-26.  Appellant testified that, prior to trial, he witnessed trial counsel speak "with the victim for over twenty minutes."  *Id.* at 25.

The Pennsylvania Supreme Court has stated:

An appellant cannot prevail on a preserved conflict of interest claim absent a showing of actual prejudice.  Nevertheless, we presume prejudice when the appellant shows that trial counsel was burdened by an "actual"—rather than mere "potential"—conflict of interest.

To show an actual conflict of interest, the appellant must demonstrate that: (1) counsel "actively represented conflicting interests"; and (2) those conflicting interests "adversely affected his lawyer's performance."  Clients' interests actually conflict when "during the course of representation" they "diverge with respect to a material factual or legal issue or to a course of action."

*Commonwealth v. Collins*, 957 A.2d 237, 251 (Pa. 2008) (internal citations omitted).

Here, the PCRA court recognized:

- 12 -

> [Trial counsel] was assigned to Ms. Seitz as a public defender, realized the conflict before a preliminary hearing could be held, and only spoke to Ms. Seitz long enough to [advise her that counsel would not be able to serve as her legal representative]. [Trial counsel] testified credibly that she neither discussed [this case] with Ms. Seitz in any way, nor took steps to represent or obtain any information as to Ms. Seitz in her matter. As such, there was no conflict.

PCRA Court Opinion, 8/4/2022, at 24.

We discern no error or abuse of discretion. There is simply no record evidence of an actual conflict of interest or, stated differently, that trial counsel actively represented conflicting interests which adversely affected her performance at Appellant's trial. The PCRA court credited trial counsel's testimony that she only spoke with the victim to explain the potential conflict and disavow her appointment as counsel for the victim before representing Appellant. With no evidence of an actual conflict of interest, Appellant is not entitled to relief on his final claim.

Order affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


Date: *6/7/2023*

- 13 -